## JENSON v. S. H. KRESS & CO.

No. 5487. Decided October 11, 1935. (49 P. [2d] 958.)

436

*Richards & Richards,* of Salt Lake City, for appellant.

*Arthur Woolley,* of Ogden, for respondent.

WOLFE, Justice.

In this case the jury returned a verdict in favor of the plaintiff for $1,570 as damages for injuries caused by alleged negligence in maintaining a cracked showcase. The material facts are as follows: The defendant and appellant on the 18th day of May, 1932, and prior thereto, conducted a general mercantile store in Ogden City. On that day about 4 o'clock in the afternoon, plaintiff entered defendant's store to buy some dress materials. She was approximately six months pregnant at that time. As she proceeded west down the south aisle of said store, she turned sidewise,

facing the counter which formed the north side of the aisle in order to pass three persons who were standing therein. In so passing she felt a pain in her abdomen. Upon looking down, she found that she was cut and was bleeding considerably. It was found that a triangular splinter of glass about one inch at the base and running into a point over a distance of about three inches had pierced her abdomen. There was evidence of the damage to her clothes, to her person, of mental suffering, expense, etc. The jagged piece of glass which punctured her abdomen came from one of the removable glass panels which were set up perpendicularly the entire length of the showcase. These panels were about two feet in length and were joined end to end and their joinings held together by risers or clamps which held the glass in the groove. The clamp is held by a couple of screws. The young lady who tended the counter testified that on the morning of the day the accident happened she had taken out the glass and washed it and putt it back. This she did once or twice a year. This was the first time in eight months that she had tended that counter that she had taken the glass out and washed it. There was no evidence as to how the glass got cracked, or how long it had been cracked before the plaintiff was cut by it. The plaintiff's evidence did not go any further than to show that the plaintiff had been injured by this piece of glass penetrating her abdomen while she was brushing up against the counter. Appellant contends that this case is directly controlled by the case of *Quinn* v. *Utah Gas & Coke Co.*, 42 Utah 113, 129 P. 362, 43 L. R. A. (N. S.) 328. Respondent contends that the doctrine of res ipsa loquitur applies. Both sides admit that the appellant's duty was to exercise ordinary care and diligence to provide and maintain a reasonable safe place of business for its customers and to exercise the same degree of care and diligence to prevent injury to them and to their property while they are lawfully in its place of business or on the premises. Both sides admit that appellant was not an insurer of the safety of its customers. The respondent

contends that a case of negligence has been made out by showing that the piece of jagged glass penetrated her abdomen while she was moving along the counter.

We cannot see how this case differs from the Quinn Case. In that case a bottle of ink had spilled, and plaintiff's dress was damaged by ink running upon it. In this case there was a cracked panel in the showcase and the person of plaintiff was injured. In neither case did any one know how the ink was spilled or the glass broken. In both cases the cause of the spilled ink or the broken glass may have been caused by the customer who was damaged or by another customer, or may have been caused by some representative of the company without negligence and unnoticed when it was done, or, in both cases, it may have been caused by the negligence of the company through a servant. The difficulty is that it is in the realm of speculation, and under such circumstances the doctrine of res ipsa loquitur cannot apply. It applies where the thing from or by which the apparent negligence speaks is shown to be under the control or the management of the store and the accident is such, as, in the ordinary course of things, does not or would not happen if those who had the management used the proper care. Where the way in which the accident happened warrants an inference of negligence, then the mere happening speaks for itself. Even then it is only evidence from which the jury may infer negligence. It is not negligence in law. See *Williamson* v. *Salt Lake & Ogden R. Co.*, 52 Utah 84, 172 P. 680, L. R. A. 1918F, 588. If the circumstances are equally consistent with a cause which would not be attributable to negligence, then the doctrine does not apply. The stage is set for the happening of the accident as the victim walks upon it. If, from the set stage as it was before the accident happened, it can be inferred from the setting itself that there was an omission or commission of the management amounting to negligence, then the thing itself speaks. Thus, cases which deal with falling elevators in office buildings or stores are illustrations.

Where the elevator could apparently have fallen only because the instrumentality was itself defective, the fact that the elevator fell bespeaks of negligence in failing to properly inspect or keep it in condition. It is the same where something falls on the head of a customer from above and from the condition of the place where the object became detached it can be inferred that it fell because of neglect or failure to take notice of a defect which must have existed for a considerable length of time. All of the cases cited by respondent are in that class. In the case of *Winterowd* v. *Christensen*, 68 Utah 546, 251 P. 360, 361, the board in the floor of the grandstand, which broke without splintering under the plaintiff's weight, was a "2x10 plank" and was "decomposed and dark, soggy, pithy." The thing itself bespoke negligence in using a board in that condition in a grandstand where business invitees and persons paying admission were to congregate. In the case of *Williamson* v. *Salt Lake & Ogden R. Co.*, 52 Utah 84, 172 P. 680, L. R. A. 1918F, 588, it was held that the sudden starting of the train warranted an inference that it was due to something unusual or extraordinary occurring in the operation and management of the train which could only be explained by the railroad company itself. In *Law* v. *Morris*, 102 N. J. Law, 650, 133 A. 427, 46 A. L. R. 1108, the plaintiff entered the premises of defendant to purchase materials for dresses. As she was examining the materials a piece of plaster, without warning, fell from the ceiling and struck her on the head, injuring her. Here the fact the plaster was in such condition as would, under ordinary circumstances, fall from the ceiling itself gave rise to the inference that there had been neglect in maintaining it. The case illustrates the difference between the principles involved in it and the instant case. In the Law Case no customer could have dislodged the plaster. In the instant case it was just as consistent that the plaintiff herself or some other customer had leaned against the showcase, wrenching the panels and thus splitting off a piece of glass, as if the defendant

had done it negligently. In the Law Case the inference was that the plaster had fallen because of neglect, and there being no evidence that any immediate shock or blow had loosened it. In the instant case there could be no such inference because the glass was exposed to other people within a very short time immediately before the accident occurred which might make it impossible for the defendant to have taken notice of it. In the case of *Russel* v. *Stewart Dry-Goods Co.* (Ky.) 56 S. W. 707, 708, the injury was caused by a splinter from the floor entering appellant's foot through her shoe. The court said:

"Common experience shows us all that a sound, well-kept floor would not ordinarily, in walking across same, injure a person's foot, through the sole of the shoe, as the evidence tends to show in this case."

It is impossible to tell from this case just what type of splinter entered the plaintiff's foot. If the situation showed that the piece of the floor which penetrated her foot was such as could not have been dislodged or made by other customers, but raised an inference only of a poorly kept floor, then it comes under the plaster case. If not, then it appears to us it should come under the doctrine of the Quinn Case. In *Wine* v. *Newcomb, Endicott & Co.*, 203 Mich. 445, 169 N. W. 832, the plaintiff, while crossing an aisle, tripped over a rope being handled by an employee removing holiday decorations. In this case it was almost negligence as a matter of law. It appeared that there was direct evidence of an employee's handling of a rope in such a negligent manner that the plaintiff tripped over it. This was sufficient evidence to go to the jury as to the defendant's negligence. In *Ober* v. *The Golden Rule,* 146 Minn. 347, 178 N. W. 586, the company built supports for a framework extending across part of the aisle between tables loaded with merchandise. The base of certain table frames which partly occupied the passage was between the tables. Plaintiff tripped over one of these bases. Here again the doctrine of res ipsa loquitur is not involved. It is a plain case of whether the building of the frames in that fashion was

negligence. The store so built them. The case would be parallel to the instant case if it could be shown that the company broke this glass or knew it to be in such condition and allowed it to remain so. Then in each case there would be an act or omission attributable to the company. Under the evidence of this case, the breaking may or may not be attributable to the company. In *Langley* v. *F. W. Woolworth Co.*, 47 R. I. 165, 131 A. 194, the peanuts on the floor of defendant company upon which the plaintiff slipped had been there for more than an hour before the accident. The court held that it was for the jury to say that this was sufficient to charge the defendant with notice of their presence and afford an opportunity to remove them. No such element appears in the instant case. In the case of *Burns* v. *Frederica Gusenburger & Son*, 124 Misc. 163, 207 N. Y. S. 189, plaintiff was injured by the collapse of a board step leading from the defendant's store. The Appellate Term of the Supreme Court held that the plaintiff by that evidence alone had proved a prima facie case, and that therefore the issue or negligence should not have been taken from the jury. This case, if correctly decided, comes under the doctrine of the Winterowd Case, although there appears to have been no evidence of the condition of the board. Since the condition of the step which permitted the collapse under the weight of plaintiff was such as could hardly have been caused by any act of another customer or another party, but from the neglect of the management, it seems to be analogous to the Law Case, supra.

For the reasons above given, we conclude that there is no evidence of negligence on the part of the defendant, and that the defendant was entitled to a nonsuit or to a directed verdict when a nonsuit was not granted. The judgment of the lower court must therefore be reversed.

The defendant also assigns as prejudicial error permitting answers to certain questions. As the questions are apt to occur in a retrial, we shall consider these assignments

as a guidance to the court should they again be asked. On cross-examination, Mr. Peterson, a witness for the defendant, was asked, "Do you, Mr. Peterson, claim that Mrs. Jenson broke this glass?" the court admonishing him to answer "Yes" or "No." Ordinarily the version, theory, or belief of any witness as to the cause of an accident is immaterial and might be highly prejudicial. On cross-examination it might be, under certain circumstances, material. Proper cross-examination does not necessarily mean that every question shall be directly material to the issues of the case. Cross-examination is the detective of the courtroom. It may be used to examine as to the credibility of testimony given or as to the credibility of the witness as a vehicle for transmitting the testimony, granted it is not too remote or the law of diminishing returns from such cross-examination has not set in. But in every case it must either tend to modify, contradict, explain, deny, or elaborate testimony of the witness in chief, or something which has been previously brought out on cross-examination, which itself was proper cross-examination. This question performed none of those offices. It is not related to anything which he testified to on direct examination or on cross-examination in any of these respects. Whether it was prejudicial error is not necessary to consider in the light of the fact that the judgment must be reversed on other grounds.

The same witness was asked, "Will you tell this jury how that lady (the plaintiff) could break that glass in the manner you have described it was broken?" The question was objected to on the ground that it was incompetent, irrelevant, and immaterial, and that it was a matter of opinion, and that this witness was not an expert. It would hardly need the opinion of an expert to answer that question. It might need the opinion of an advantaged observer in order to aid the jury. But the question was improper because the witness had not testified on cross-examination that "the lady" had broken the glass, but only

that she said that she had "evidently broken it." Therefore, it was not proper cross-examination under the rule above stated because it did not tend to elaborate or in any way explain or modify or contradict any of his statements as to what he had been told by "the lady." Under rare circumstances such a question might go toward affecting the credibility of a witness. It may in certain cases be proper to ask a person to illustrate how something could have happened in the manner in which the witness claims he was told it happened, in order to show that he must have known that such a statement was ridiculous, and therefore his reaction would have been such as to call for some response from him in that regard, which, if he had not made, might tend to show that the statement itself was never made. But this question did not fall under that category. The question does not call for an illustration or description of the manner in which "the lady" told him the glass was broken, but calls for a description as to how it could have been broken in the manner he had "described it was broken," when he had not in any manner described how it was broken.

Plaintiff was asked in rebuttal, "Did you state to Mr. Peterson, the man who testified here, that you crowded against the glass and evidently broke it?" This was objected to on the ground it was incompetent, irrelevant, and immaterial, an improper impeaching question on an immaterial matter, and was not proper rebuttal. The objection was not well taken. The real error lay in the fact that Peterson was asked to answer whether he claimed that Mrs. Jenson broke the glass. When he was required to answer that question he had to answer that he did not claim that she had broken the glass, but that she said she had broken it. It necessarily drew in an admission on her part.

The plaintiff would be permitted to rebut such admission. The question was not aimed at impeachment, but at rebuttal. The difficulty was that the first error above mentioned opened the way for what followed; but the door having been

opened, and Peterson therefore having necessarily testified as to what was in effect an admission the plaintiff must be permitted to rebut it.

The plaintiff on rebutttal was asked, "Did you have any conversation with Miss Melba Olson concerning this glass at that time?" to which the defendant objected as being incompetent, immaterial, and irrelevant and not proper rebuttal. Miss Melba Olson was not a witness. She had evidently been an employee of the company and was outside the state. Over objection, the witness answered that Miss Olson had said, "When she pulled the glass out she said that the girls often cut their fingers in reaching over to get some article; that there was a sharp or jagged piece or a nick in the glass and they very often cut their fingers." The question was palpable improper. As to what Miss Olson had said was hearsay. It could not have been an admission on behalf of the company. It is doubtful even if it had been competently offered that it would have been material. What might have happened with the glass on other occasions would hardly throw any light on the cause of this breakage or the time it had remained in its broken state.

This disposes of assignment Nos. 5, 6, 7, and 8. The defendant excepted to instructions Nos. 8 and 10 in its assignments Nos. 9 and 10, respectively, but did not argue in its brief assignment No. 10. Instruction No. 8 reads:

"In determining whether the defendant was negligent in maintaining the show case, you may consider the question whether or not it was cracked or broken, and, if so, whether or not the defendant knew or by the exercise of ordinary care should have known it was cracked or broken and whether or not the defendant failed to give the plaintiff warning or notice of such condition; and all the circumstances in evidence, and from them you should determine whether or not the defendant was negligent."

The instruction was erroneous, not exactly on the ground argued by the defendant, but for the reason that there is

no evidence that the defendant was negligent. Therefore, it was improper to predicate an instruction upon the theory that the jury might consider certain things to determine whether the defendant was negligent. While, had it been otherwise proper, it would have been better for the court to have added after the word "negligent" in the last line of the instruction, the words "in the manner alleged in the plaintiff's complaint," yet such omission was not prejudicial or very material, as claimed by appellant, especially in view of instructions Nos. 9 and 11, which held down the question of negligence to the specific allegations of negligence alleged in the complaint.

The judgment of the lower court is reversed, and the cause remanded for a new trial. Costs to appellant.

ELIAS HANSEN, C. J., and FOLLAND, and EPHRAIM HANSON, JJ., concur.
MOFFAT, Justice.

I concur in the result.