395 P.2d 25

**Eddie SOLIZ and Vidale Soliz, by Eddie Soliz, her guardian ad litem, Plaintiffs and Respondents,**

v.

**Edward Wilson AMMERMAN, by his guardian ad litem, LaVerne Bruce Ammerman, and LaVerne Bruce Ammerman, Defendants and Appellants.**

No. 10028.

Supreme Court of Utah.

Sept. 1, 1964.

———◆———

Hanson & Garrett, Salt Lake City, for appellants.

Kipp & Charlier, Salt Lake City, for respondents.

WADE, Justice.

The defendant, Edward Wilson Ammerman, a minor, by his guardian ad litem appeals from a judgment of a jury verdict for $15,000 general damages and $446.25 special damages claimed to have resulted from an automobile accident. The accident occurred about 8:15 in the morning of March 21, 1962, at the red light intersection of Second West Street and 200 North Street in Salt Lake City. Other injuries to other persons by this accident were tried and disposed of at the same trial, but no appeal is pending on such other matters.

The accident occurred while plaintiff Soliz, the respondent here, was driving two of his children to school. He was driving south on Second West Street toward the 200 North intersection when the red light changed to green, and he continued into the intersection without stopping. Before the light changed the Ammerman car, coming from the south, was stopped behind another car which went on through the intersection to the north when the light changed to green. The Ammerman car drove into the intersection and made a left-hand turn to the west across the course of the Soliz car coming from the north in the second lane to the right of Second West Street, where a head-on collision occurred between the Soliz and the Ammerman cars, causing the injuries in question. At the trial, without objection of the defendant, the court found Ammerman guilty of negligence as a matter of law, but submitted the question of Soliz's contributory negligence and proximate cause to the jury.

Defendant urges four errors as grounds for reversal:

1) The court erred in not limiting Dr. Bernson's testimony on his second appearance to rebuttal of the testimony of Dr. Clegg called by the defendant.

2) The court erred in refusing to allow x-rays received as exhibits to be taken to the jury room.

3) The court erred in instructing the jury.

4) The verdict is excessive from passion and prejudice.

1) While the trial court has wide discretion in permitting departures, usually the party who has the affirmative burden of proof is required to produce the first evidence on an issue, and at that time should produce all his evidence in chief. Then after his adversary has produced all his evidence, the former should be confined to rebuttal evidence [1] or evidence which tends to answer or explain his adversary's evidence.[2]

There is sharp disagreement between the medical testimony of the plaintiff's and defendant's doctors concerning the meaning and effect of what the x-rays show. Plaintiff Soliz called three doctors who produced six x-rays which they exhibited behind lights and explained to the court and jury. These doctors claim that these x-rays indicated that this accident had ruptured three intervertebral discs of Soliz's neck near his shoulders which radiated into his arms, causing stiffness and severe pain. His doctors recommended an operation to remove these discs, but Soliz insisted on waiting awhile to give his neck a chance to heal naturally. However, Soliz insisted that since the accident he had been subject to great numbness, stiffness, soreness and pains in his neck, which were almost unbearable.

Dr. Bernson, one of plaintiff's three doctors, went into great detail in describing the x-rays. He stated that dye had been inserted into the cervical area of Soliz's neck to make the ruptures show on the x-ray. He gave as his opinion that the conditions in the plaintiff's neck were not the result of any hypertrophic or arthritic changes in plaintiff's back, but resulted from his automobile accidental injuries. This testimony was given before any x-rays were actually received in evidence but while they were being explained. Later, other witnesses of plaintiff were called. Then defendant, with leave of the court called as his own witness Dr. Clegg, before plaintiff had completed his case, who produced three x-rays of plaintiff's neck condition. Dr. Clegg, however, explained, contrary to Dr. Bernson, that these x-rays did not show any rupture of the intervertebral discs, but that they merely show that hypertrophic arthritis or osteoarthritis was causing plaintiff's pain, and that injuries, if any, from the accident had completely healed. His three x-rays were received in evidence.

Later, Dr. Bernson was recalled and at great length, over defendant's objection, exhibited plaintiff's six x-rays and identified two black and white snapshots of two of the x-rays in which dye had been inserted with lines running from the claimed ruptured discs to an object outside of Soliz's chest.

1. See 53 Am.Jur. 101, Section 115 Trial.

2. See Wigmore on Evidence, Third Ed., Sec. 1873.

Thereafter, the six x-rays and two snapshots were received in evidence. While there was some repetition and plaintiff's x-rays were received in evidence only after the testimony of Dr. Clegg, who was called before plaintiff had completed his evidence, we find no prejudicial error in this regard, and the trial court did not abuse its discretion.[3]

■ 2) It was not prejudicial error to refuse to allow the jury to take the x-rays to the jury room.

In the interest of giving the jury the benefit of all the evidence, it would seem proper to allow the jury to take the x-rays to the jury room, for even without the x-ray lights they could have been helpful by being held up to the light for viewing. But their exclusion was not prejudicial.[4] All the x-rays, six of the plaintiff's and three of the defendant's, were excluded from the jury room. The two black and white pictures of x-rays were much clearer and understandable than the x-rays themselves. There is nothing about this situation which could possibly suggest that the court agreed with one side or the other, for it excluded all the x-ray pictures of both sides from the jury room. So we find no prejudicial error.

■ 3) The following jury instruction was not prejudicial error:

"A motorist who has the right of way need not anticipate sudden outbreaks of negligence on the part of other drivers. * * * "

Before giving this instruction the court had already found defendant negligent as a matter of law, and the issue for the jury to determine was whether Soliz was guilty of contributory negligence proximately causing the accident. The defendant claims that under these circumstances this instruction constituted a finding that Soliz had the right of way; that negligence on the part of the defendant was a sudden outbreak of negligence and that plaintiff had no duty whatsoever to observe any negligence on the part of the defendant. This claim is clearly incorrect. This instruction merely says that a motorist who has the right of way need not anticipate sudden outbreaks of negligence from other drivers. It did not instruct the jury that there was here such a sudden outbreak of negligence, but left that question along with the questions of who had the right of way for the jury to determine. Further, in a later instruction the court explained in great detail the attention which a motorist must give to other motorists in an intersection. In view of these facts we find no prejudicial error.

■ 4) Although the verdict of $15,000 general damages is substantial, we find

3. See citations in notes 1 and 2.

4. See Rule 47(m) U.R.C.P.; see also annotation of this question in 10 A.L.R. 2d 918–920.

nothing to indicate passion or prejudice in view of the evidence of the pains, suffering, recommendation by plaintiff's doctors to remove injured discs, and the very definite claims of plaintiff that he did suffer great pains.

Judgment of trial court affirmed.

Costs to plaintiff.

HENRIOD, C. J., and McDONOUGH and CROCKETT, JJ., concur.

CALLISTER, Justice (dissenting).

Under the circumstances of this case, it was prejudicial error for the trial court to refuse to allow the jury to take the x-ray negatives to the jury room, when they were permitted to take the plaintiff's exhibits of Polaroid prints that were essentially identical to two of the plaintiff's x-ray negatives. The trial court considered the Polaroid prints as independent photographs and not photographs of the corresponding x-rays. However, the record reveals that the Polaroid films which are a positive print rather than a negative were essentially identical to the plaintiff's x-rays.

There was a serious dispute among the expert witnesses as to the proper interpretation of the various x-ray films. The plaintiff argued that his x-rays indicated a ruptured disc, a consequence of the accident. The defendant claimed that his x-rays revealed that the plaintiff suffered from an osteoarthritis condition that was independent of the accident.

There was no meaningful distinction between the Polaroid prints and the x-ray negatives; nor was there any indication that the jury would be more competent to interpret a photograph of the spine than a similar x-ray. On the contrary, the withholding of the x-ray negatives and the submission of the Polaroid prints, which were buttressed by the testimony of plaintiff's expert as revealing a ruptured disc, could have created a prejudicial inference as to the admissibility and importance of the excluded exhibits.