The BOARD OF EDUCATION of SOUTH SANPETE SCHOOL DISTRICT, Plaintiff and Respondent,

v.

Donald K. BARTON and Utah Farm Production Credit Assn., Defendants and Appellant.

No. 15946.

Supreme Court of Utah.

Aug. 28, 1980.

Paul R. Frischkneckt, Manti, for Farm Production Credit Ass'n.

Arthur H. Neilsen and Clark R. Nielsen of Nielsen, Henriod, Gottfredson & Peck, Salt Lake City, for Barton.

Bruce Findlay and Dan S. Bushnell of Kirton & McConkie, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Defendant Donald K. Barton appeals, complaining of the inadequacy of a jury award of $40,000 for his 24.49 acre tract of land in Manti taken by eminent domain by the plaintiff.

 The defendant's first argument in support of his contention that insufficient damages were awarded for his property is that the plaintiff's complaint itself had stated the value to be $48,980. The rejoinder to this is that that figure included both the land and water rights. The trial court correctly ruled that the water rights were not to be taken. Plaintiff's appraiser testified that the defendant's property would be worth substantially less without the water rights. Accordingly, the $40,000 awarded could reasonably be found to be supported by the expert testimony as to the value of the land. Nevertheless, what the defendant was entitled to was the value of his land as fixed by the jury, based upon the evidence, and not necessarily as stated in the pleadings of either party.

 Defendant further urges that the trial court committed error which influenced the jury in not awarding greater damages in its rulings concerning testimony about the sale of an acre of land in Manti to the L.D.S. ("Mormon") Church for $10,000 by one Grant Cox. The trial court's statement that it was not a comparable sale is apparently correct. The testimony of the defendant's appraiser, Marcellus Palmer, and the plaintiff's witness, Wilbur Cox, indicated that the transaction involved more than one acre and that Grant Cox was to give the church some adjoining property as part of the deal.

 Defendant also complains about permitting Wilbur Cox to be called as a witness concerning this transaction. He asserts that it had been agreed, and the court included in its pre–trial order, that the only witnesses to be called were those named therein, except for rebuttal. Rebuttal evidence is that which tends to refute, or to so modify or explain, as to nullify or minimize the effect of the opponent's evidence. See

*Soliz v. Ammerman*, 16 Utah 2d 11, 395 P.2d 25 (1964). Since the testimony Mr. Palmer had given about the Cox transaction could have been regarded as requiring explanation, it was quite proper and consistent with the just-stated definition to consider Wilbur Cox's testimony as rebuttal. See *Jenson v. S. H. Kress & Co.*, 87 Utah 434, 49 P.2d 958 (1935). It is also pertinent to note that the defendant cross–examined Wilbur Cox about the matter without showing any significant difference from the other evidence. We are unable to perceive how the trial court's rulings, or what was said with respect to the Cox sale, resulted in any prejudice to the defendant.

Defendant also assigns error in the trial court's ruling concerning Dee Ogden, who had made an appraisal at the instance of the plaintiff. Pursuant to a discussion of this matter in the absence of the jury, plaintiff requested the court to rule that the defendant could not elicit before the jury the fact that Ogden had been employed by the plaintiff Board of Education. The plaintiff's motion was

[t]o prevent Mr. Ogden from, in any way, testifying or the defendant landowner from asking the witness that his appraisal was made for the School Board, or that Mr. Ogden was paid a fee . . . .

The trial court explained its ruling as follows:

The motion is granted and it looks to me like it would not be proper and I think I would be committing prejudicial error to allow this to go in. You can call him for an appraisal but not to give testimony that he was employed by the School District or make any reference to the School District's paying him so you may get his appraisal, but that's the limit of it, Mr. Ogden.

 The trial court erred in ruling that the defendant could call Ogden to give his appraisal of the condemned land but could not be questioned as to the fact that he was employed by the school district. That testimony went to the heart of the issue at trial.

Defendant's purpose was to elicit testimony concerning the value of the property,

which it may be assumed was greater than what plaintiff's witnesses had testified to. It was, of course, directly probative of the central issue in the case. But equally important, defendant had strong reason and a legal right to ask Ogden the identity of his employer. That testimony, with the likelihood of greater objectivity, would have served to rebut the valuation testimony of plaintiff's expert witnesses. To deny the defendant that right is to deny him a fair trial. The jury was entitled to know the essential background facts of the witness so as to be able to give proper weight to his testimony.

The term "expert testimony" connotes a degree of objectivity imposed by the discipline and training of the expert. But valuation testimony as to property in a condemnation proceeding sometimes falls short of that objective, partly because of the numerous subjective and variable values, and therefore may differ sharply from the testimony of another expert witness. Experts' opinions, especially in the area of valuation of property, often vary so widely that one may wonder whether they are valuing the same parcel of land.

The court in this case prevented inquiry as to the identity of the employer of an expert witness. The jury could not, therefore, evaluate the process by which plaintiff chose his experts nor determine the appropriate weight to be afforded the testimony of the witnesses for the respective parties.

The defendant had a right to bring to the jury's attention the fact that a witness had been initially enlisted by plaintiff and pursuant to that employment had acquired his knowledge and formed his opinion as to the property's value. The circumstances by which Ogden became aware of the facts needed to form his opinion provided the necessary foundation for the jury to weigh the valuation testimony. More importantly, his employment bore directly on the all-important issue of his objectivity or bias. This information was essential, especially in light of the highly disparate views of the same facts that may be arrived at by different experts. See Myers, "*Battle of the Experts*": *A New Approach to an Old Problem in Medical Testimony*, 44 Neb.L. Rev. 539 (1965); McCoid, *Opinion Evidence and Expert Witnesses*, 2 U.C.L.A.L.Rev. 356 (1955); DeParcq, *Law, Science and the Expert Witness*, 24 Tenn.L.Rev. 166 (1956).

Expert witnesses, like other witnesses, are influenced by unconscious, and sometimes conscious, biases. The problem of the expert witness's bias has been commented on by Dean Wigmore:

> That bias itself is due, partly to the special fee which has been paid or promised him, and partly to his prior consultation with the party and his selfcommittal to a particular view. His candid scientific opinion thus has had no fair opportunity of expression, or even of formation, swerved as he is by this partisan committal .... [2 *Wigmore on Evidence* § 563 at 761 (Chadbourn rev. 1979).]

Defendant clearly was entitled to the testimony which the prohibited questions would have elicited, simply because it may well have been less likely to be biased than any of the other experts called by the parties. This is especially true in this case because the valuation of plaintiff's and defendant's experts were poles apart. Ogden's appraisal was made under the direction of the party adverse to the party who sought to adduce Ogden's testimony and thus carried a mark of objectivity that may not have been commanded by the other experts.

The defendant did not propose to call Ogden simply to impeach him. The questions prohibited by the trial court could not possibly have resulted in impeaching the witness; indeed, they would have given weight and substance to his testimony. If the proffered testimony would have discredited anyone's testimony, it would have been the testimony offered by *plaintiff's* witnesses. It is axiomatic that an attack on the credibility of a party's witnesses may be conducted by the other party either by his own cross–examination of the witnesses or by calling other witnesses to accomplish that purpose. *Haver v. Central Railroad Co.*, 64 N.J.L. 312, 45 A. 593 (1900). More

importantly, the testimony, because of its direct relevance as to value, went well beyond impeachment evidence.

■ Before Ogden was permitted to testify, plaintiff's counsel interrupted by approaching the bench for a discussion and made the motion above referred to to prevent the testimony of the witness. The court responded by an order which precluded defendant's obtaining the testimony regarding the witness's employment by the school district or any reference to the school district's paying him to make an appraisal. Having been denied the right to examine the witness properly and to adduce the evidence of employment, the defendant cannot be faulted for not having called the witness to testify solely as to the amount of his appraisal. Such testimony, no doubt, would have been lower than the amounts testified to by defendant's other experts and therefore without the necessary information as to the witness's background, damaging to defendant's case. Accordingly, the defendant was effectively precluded from calling Ogden under the restriction imposed.

Because of that error which appears to us as substantial and prejudicial, it is necessary that the judgment be reversed and the case remanded. No costs awarded.

MAUGHAN, WILKINS and HALL, JJ., concur.

CROCKETT, Chief Justice (dissenting).

I am in agreement with the main opinion, except as to the manner in which it deals with the trial court's handling of the matter relating to possible testimony of Mr. Dee Ogden. He appears to have made an appraisal at the instance of the plaintiff, but was not called as a witness. Pursuant to a discussion of the matter in the absence of the jury, plaintiff requested the court to rule that defendant could not elicit that fact before the jury. As will be noted in the statement quoted in the main opinion, the court told defendant's counsel:

*You can call him for an appraisal*, but not to give testimony that he was employed by the school district. [Emphasis added.]

In regard to the charge of error, I make several observations. The first is that I offer no defense of any notion that an expert cannot be asked who hired him. It is to be conceded that such a witness may be examined as to who employed him, and who is paying him, as having a possible bearing upon his motivation and his credibility.[1] Nor is it to be doubted that a trial court should be quite liberal in allowing any competent evidence offered by a party to prove his case.

In regard to the evidence in question, it is my impression from the record that the trial court simply rejected the idea that Mr. Ogden could be called solely for the purpose of showing that he had been hired by the plaintiff School Board to make an appraisal and that the Board then failed to call him as its witness. It is significant to note that defendant's counsel did not pursue the matter and make plain to the trial court what he was proposing; and that he did not in any manner indicate what Mr. Ogden's testimony would be.[2] Therefore, any question as to the latter's credibility was never placed in issue; and more importantly, there is no basis upon which to determine whether the trial court's statement had any prejudicial effect upon the defendant's case.

I think the trial court was justified in its view that each side had a full and fair opportunity to present its evidence, including that the experts for each side had sufficiently presented their respective views as to value to the jury to enable it to make a fair determination on that issue. When that procedure has been accomplished, and the trial judge has also placed his stamp of approval upon the verdict by denying the motion for a new trial, this Court on review should indulge the verdict and the judgment with the presumptions of verity; and

1. See 31 Am.Jur.2d, Expert and Opinion Evidence, § 50; and authorities cited in the main opinion.

2. That a proponent of evidence must make some such offer or indication of the substance of evidence, see Rule 5, Utah Rules of Evidence.

should not disturb it unless it is shown that there is substantial error in whose absence there is a reasonable likelihood that there would have been a different result.[3]

Upon the basis of the record, I am not persuaded that there was any such error or unfairness as to justify upsetting the verdict and judgment.

---

**3.** See Rule 61, U.R.C.P.; *Eager v. Willis*, 17 Utah 2d 314, 410 P.2d 1003 (1966).