417 P.2d 132

**SUPER TIRE MARKET, INC., Plaintiff and Respondent,**

**v.**

**Clyde ROLLINS, dba Rollins Mine Supply, Defendant and Appellant.**

**No. 10531.**

Supreme Court of Utah.

July 26, 1966.

Allen B. Sorensen, Provo, for appellant.

Alan D. Frandsen, Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff Super Tire Market sues for a balance of $1233.02 on an account for truck tires supplied to the defendant. Defendant does not dispute the correctness of the account, but claims that certain of the tires failed to measure up to a warranty

given, from which the damage exceeds the amount due on the account. The trial court found for the plaintiff. Defendant appeals, contending that the evidence compels a finding in his favor on the issue of breach of warranty.

Super Tire Market of Salt Lake City has branches in other towns in Utah including Provo. Clyde Rollins, dba Rollins Mine Supply, operates a fleet of large diesel trucks hauling coal, ore and mine supplies between Provo, Utah County, and the Price-Helper area in Carbon County. He began buying tires from plaintiff in 1959 when Jack Jensen, with whom Rollins dealt when Jensen worked for another tire dealer, became a salesman for the plaintiff. It is apparent that their friendship influenced this change. Jensen was the only one who handled plaintiff's business with defendant Rollins. The latter bought tires as he needed them, amounting to about 100 tires by the time some difficulty arose in February 1963, shortly after Jensen had left the plaintiff's employ. Rollins demanded and was refused free recapping of some tires he claimed had worn out before an alleged warranty had expired. Plaintiff accepted the return of some tires from the defendant and gave him credit for $643.68, leaving the balance herein sued on. Failure to pay that account resulted in this suit by plaintiff and the defendant's claim of breach of warranty to offset it.

Rollins' version of the warranty is that in mid-1962, when he complained to Jensen about the poor mileage he was getting from the tires and threatened to buy elsewhere, Jensen had telephoned Mike Billus, one of the co-owners of the plaintiff, and obtained permission to give an oral warranty on the two types of tires being used: on the "Motrack" tires, 75,000 miles; and on the "Mighty Mo's," 100,000 miles, with a recap if they should wear out sooner.

■■ In regard to the defendant's contention that the evidence compels a finding for the defendant on his claim of breach of warranty, it should first be noted that it is an affirmative defense which he has the burden of proving by a preponderance of the evidence.[1] That being so, it would not be sufficient that there is merely some evidence which would support such a finding. Only if the evidence is such that all reasonable minds would be so persuaded would we reverse the trial court and rule as a matter of law that a warranty was given and breached. Conversely, if there is any basis in the evidence upon which the trial court could fairly and reasonably remain unconvinced of those facts, the refusal to so find must be sustained.[2]

1. Southern Box & Lumber Co. v. Home Chair Co., 250 N.C. 71, 108 S.E.2d 70; cf: Rees v. Archibald, 6 Utah 2d 264, 311 P.2d 788; see Rule 8(c) U.R.C.P., Van-adium Corp. of America v. Wesco Stores Co., 135 Colo. 77, 308 P.2d 1011.

2. See discussion in: DeVas v. Noble, 13 Utah 2d 133, 369 P.2d 290; Page v. Fed-

Such strength as there is for the defendant's position derives from the testimony of Jack Jensen, plaintiff's salesman in the transaction:

Q. Why did the one have 100,000 mile guarantee and these the 75,000 mile guarantee?

A. Because Mike Billus gave me instructions to give that warranty.

Q. When?

A. When the tires were sold, before they were sold.

Q. When did Mr. Billus tell you this?

A. Just before I sold them, over the telephone.

Defendant's argument is that because this evidence is uncontradicted and comes from a witness who is not a party, the only reasonable finding the court could have made was that there was a warranty.

■■■ The fact that evidence is "uncontradicted" may be persuasive, or in some instances even conclusive. But as we discuss below, this would depend upon the circumstances. Preliminarily, we note our agreement with the contention that in spite of the often declared broad prerogative possessed by the fact trier in judging the credibility of witnesses and determining facts, it is not entirely without limit.[3] One

of the most salutary features of our system of government is that throughout its entire structure there are checks and balances against the exercise of despotic power or unreasoning action by any official or functionary. It is the duty of the courts to safeguard these protections; and they themselves should not be exempted from this principle. This is the basis for the right of review on appeal whereby a court or jury may be prevented from obdurately refusing to accept credible uncontradicted evidence without any rational basis for doing so. The defendant's challenge poses the question whether the trial court was guilty of such a transgression here.

■■■ In pursuing that inquiry, it is not our function to look at the testimony of Mr. Jensen in isolation. We are obliged to survey it in composite with all of the evidence in the case. In doing so, plaintiff points out several things which the trial court could regard as tending to discredit it. The first is that he and the defendant had had a friendship of some years standing which was close enough to carry defendant's business from one institution to another; and that the business of the parties had been reasonably satisfactory until shortly after Mr. Jensen's employment with plaintiff was discontinued in December 1962. It could be inferred that there were

eral Security Ins. Co., 8 Utah 2d 226, 332 P.2d 666.

3. That it is the exclusive province of the jury (the fact trier) to judge the credibility of witnesses, subject only to the limitation that it cannot be permitted to capriciously or arbitrarily reject credible evidence when there is no sound reason for doing so, see Holland v. Brown, 15 Utah 2d 422, 394 P.2d 77.

reasons for this; and that Jensen had a greater interest in his long time close friend than in his former employer. Consistent with this is the fact that when questioned as to just what the warranty was, which was the basis for the defendant's claim of recovery, Jensen testified with exactitude. But when questioned about when it was given, he was much less certain. He once said that it was given in August 1962; again that it was in November 1962; and still again that it was made about the time of a sale of two sets of Mighty Mo's which would have been in May of 1962.

■■■■ Another matter pointed out by plaintiff is that it was elicited from Jensen that, according to him, the tires bought by Rollins were wearing out too quickly as early as 1961. Nevertheless it is without dispute that Rollins continued to purchase tires right up to the difficulty which occurred in February 1963. Also to be considered is the fact that Mr. Jensen's testimony related to his own end of a telephone conversation, with no one present except himself and his friend the defendant, whose interest it serves. It seems to us that in the situation just recounted there are things which the trial court could regard as frailties casting sufficient doubt upon plaintiff's evidence that he could fairly and reasonably

remain unconvinced that the defendant was given a warranty.

■■■■ The plaintiff's denial that a warranty was given was supported by the testimony of Mr. Kenneth Stika, the sales manager of the Provo store where the tires were purchased. He stated that while he was not present and had no personal knowledge of the claimed conversation between his salesman Jensen and Mr. Rollins, it was not the policy of the company to authorize or to give such a warranty as plaintiff claims. Defendant attacks this evidence on the grounds that it is inadmissible; and that in any event, it does not disprove the specific warranty given to him. The defect that it does not relate directly to the alleged conversation of warranty goes to its weight rather than to its admissibility. Proof as to what was the custom and the policy of the business in regard to the claimed warranty could properly be regarded by the fact trier as having some probative value on the issue and was therefore competent evidence.[4] On this point we further note that when the trial is to the court, the rulings on evidence are not of such critical moment as when the trial is to a jury, because it is to be assumed that he has and will use his superior knowledge as to the competency and the effect which should be given evidence.[5]

4. See Cobin v. Midland Mutual Life Insurance (9th Cir.) 260 F.2d 92; and Portland Postal Emp. Credit Union v. United States National Bank, 171 Or. 40, 135 P.2d 467, 136 P.2d 259.

5. See In re Baxter's Estate, 16 Utah 2d 284, 399 P.2d 442. See discussion in: Ogden Iron Works v. Industrial Comm., 102 Utah 492, 132 P.2d 376.

It is unnecessary to consider the plaintiff's argument as to the insufficiency of defendant's proof concerning actual mileage these tires had run, and of any damage suffered by reason of breach of warranty.

Consistent with what we have said above we are not persuaded that the evidence is such as to compel a finding that the defendant was entitled to an offset of the account because of breach of warranty.

Affirmed. Costs to plaintiff (respondent).

HENRIOD, C. J., McDONOUGH, and CALLISTER, JJ., and A. H. ELLETT, District Judge, concur.