Colin Edward HARDY, Plaintiff
and Respondent,

v.

Nellie Peterson HARDY, Defendant
and Appellant.

No. 870348–CA.

Court of Appeals of Utah.

June 20, 1989.

918

John B. Anderson, William A. Somppi, Allan M. Metos, Salt Lake City, for defendant and appellant.

John F. Clark, Salt Lake City, for plaintiff and respondent.

Before DAVIDSON, GARFF and ORME, JJ.

GARFF, Judge:

Defendant/appellant, Nellie Peterson Hardy, appeals the trial court's order which modified the divorce decree transferring custody of the parties' minor child, S., from her to plaintiff/respondent, Colin Edward Hardy. We affirm in part and remand for findings consistent with this opinion.

The parties were married in 1982 and had one child, S. During this marriage, both parties engaged in drug and alcohol abuse. They were divorced on April 8, 1985, stipulating that appellant was a fit and proper person to have custody of S. The trial court was unaware at that time that appellant was addicted to cocaine and that respondent was an alcoholic.

In November 1985, respondent successfully completed a hospital alcoholism treatment program, and was alcohol-free at the time of this action. However, he used marijuana twice in April 1986.

In the summer of 1985, appellant substantially increased her cocaine usage and became romantically involved with Rudy Lema, a drug dealer. In February 1986, appellant quit her job because of cocaine usage. During this time, appellant neglected S. In the beginning of 1985, S. had been a bright, outgoing, happy three-year-old who made friends easily. By the end of 1985 and during the first three months of 1986, however, she had become withdrawn, standoffish, depressed, and exhibited other disturbed behavior as a result of appellant's neglect.

On April 18, 1986, at 1:00 p.m., a highway patrolman stopped appellant for speeding and driving erratically on the freeway in Utah County. He found S. in the vehicle, unrestrained by a seatbelt. Because appellant was in a confused, excited, incoherent state and appeared to be under the influence of drugs, the patrolman transported the two to the Timpview Mental Health Unit in Provo and involuntarily committed appellant. Appellant and S. were then transported to the University Hospital in Salt Lake City. Appellant's attending physician believed that she was suffering from chronic cocaine abuse syndrome in which delusional disorders and severe impairment might be present for weeks or months, and that appellant was in no condition to care for S.

University Hospital personnel informed respondent that appellant had been admitted to the hospital and that if he was not able to pick up S., the hospital would have to place her in a shelter home. Respondent agreed to take S. and to return her to appellant's custody upon her discharge. Instead of returning S. to appellant's custody, however, he took S. home with him that night and subsequently moved her to his parents' home in Saratoga, California.

On April 24, 1986, appellant discharged herself from the hospital against medical advice, and returned to her parents' home in Scottsdale, Arizona. She subsequently admitted herself to Terros, an outpatient drug treatment center in Phoenix, Arizona, where she completed a twenty-one day detoxification program.

On May 8, 1986, respondent filed a motion for modification of the 1985 custody order, requesting custody of S. On May 19, 1986, the trial court heard respondent's motion, and, in a preliminary injunction, ordered both parties to undergo home stud-

ies and psychological evaluations. It also awarded temporary custody of S. to appellant so long as she resided with her parents in Scottsdale, Arizona, and forbade either party to abuse drugs in S.'s presence.

On September 5, 1986, appellant's counsel withdrew. Appellant subsequently obtained representation from the Arizona-based Legal Aid Society.

In September 1986, the court appointed a social worker, Frances R. Purdie, to conduct home studies and a licensed psychologist, Dr. Barbara Liebroder, to conduct psychological evaluations of the parties.

The case was set for trial on March 2 and 3, 1987, but, upon appellant's motion, was continued until May 7 and 8, 1987 so that appellant's new counsel from the Legal Aid Society, David Hartwig, could prepare for trial.

On February 27, 1987, respondent was granted extended visitation with S. for forty-five days from March 4, 1987 to April 14, 1987. Liebroder evaluated S. a second time immediately following her return from this visitation.

On March 28, 1987, appellant married Robert Bruce Blake in Arizona. Respondent, Purdie, and Liebroder were unaware of her remarriage until the day before trial. Consequently, no home or psychological studies were done involving Blake.

Appellant's attorney, Hartwig, left the Legal Aid Society shortly before trial. Appellant's case was then assigned to other Legal Aid Society attorneys. Despite his pending departure, Hartwig made no formal motion to continue the May trial date, but, one week before trial, contacted the judge by telephone to ask for a continuance, which the judge denied.

The matter came to trial on May 7, 8 and 12, 1987 before the same judge who had made the initial custody award. Hartwig, despite his departure from Legal Aid, was present for part of the trial and conducted much of the examination and cross-examination on the second day of the trial.

Purdie, on the basis of her home evaluations performed on the parties and their parents, testified that S. was emotionally deprived, and that, even though appellant and her parents obviously cared for S., their concern and caring were not expressed in such a way that would help S. to realize her full potential. She testified, instead, that S. was being emotionally damaged in her present environment and that she would have more of her emotional needs met in respondent's custody.

Liebroder, who had performed psychological evaluations on each of the parties, two on S., and a screening evaluation on respondent's new wife, testified that appellant's drug use, because it was being treated and was currently under control, was not appellant's most serious problem, although she had a poor prognosis for continued abstinence. Liebroder concluded that appellant's most serious problems were that she was extremely self-centered and had difficulty empathizing with, understanding, and caring in a significant way for other people, and that these were symptoms of a chronic, change-resistant character disorder. She noted no really significant interaction between appellant and S., who had an unusually negative self-image.

Liebroder indicated that S. appeared to be suffering from a lack of attention and nurturing. She stated that S.'s needs for a structured environment, adequate stimulation, and interaction with other children were not being met, and that she had suffered serious emotional damage while in appellant's custody. She concluded that S. was in serious jeopardy of sustaining permanent emotional damage along with loss of use of her intellectual potential and personality, and had already adopted, at age four, a very non-achieving lifestyle.

Liebroder testified that respondent, on the other hand, had a great deal of energy and determination to succeed and was a disciplined person. She found that his relationship difficulties were related to his alcoholism, which was currently under control, and that he had the ability, stability, and structured lifestyle to be a good parent for S. Regarding S.'s April visitation with respondent, Liebroder indicated that S. had changed behaviorally for the better, that her intelligence scores had jumped twenty

points, and that these changes were not attributable to chance, but were reflective of the time S. had spent in respondent's custody.

Dr. Lindeman, a psychologist hired by appellant, testified that appellant's personality was within normal limits and that, contrary to Liebroder's study, appellant did not have any serious psychological or emotional problems. He indicated that he was pleasantly surprised with S.'s relationship with appellant, and that appellant not only did not have the personality disorder diagnosed by Liebroder, but that Liebroder's study did not justify such a diagnosis.[1] He also noted, however, that appellant was in the middle to high risk range for further drug abuse.

Liebroder rebutted Lindeman's testimony, stating that he used a very cursory battery of tests to arrive at his conclusions as opposed to her large variety of in-depth tests, and because Lindeman's observation of S. took place two weeks after she returned from visitation with respondent, the behavior he observed was attributable to the visitation.

In summary, Liebroder believed that respondent was more likely than appellant to remain alcohol and drug free over time. Because she found that S.'s social and psychological needs were not being met, and that, at age four, she was already moving into a non-achieving, manipulative life pattern as a result of the current custodial situation with appellant, Liebroder recommended that respondent take custody of S.

During the trial, respondent's counsel requested publication of Rudy Lema's deposition rather than bringing him in as a witness, because, at that time, he was a federal prisoner in transit to a federal penitentiary. However, the judge refused to publish the deposition, which he had read prior to trial, because respondent's counsel had made no attempt to serve process on Lema.

The court excluded some proffered evidence during the trial. Most of this evidence was proffered by respondent to show, in greater detail, the nature and extent of appellant's cocaine addiction. Appellant's only disallowed evidence was a letter written by her therapist and a home study performed by her counselor. The judge disallowed the letter because appellant had not timely provided it to respondent, and the home study because he found that the counselor was not qualified as an expert.

At the conclusion of the trial, custody was transferred to respondent. On June 19, 1987, appellant moved for a new trial and a stay of the custody order pending appeal. On June 29, Hartwig filed an affidavit indicating, among other things, that he had requested a continuance to allow new counsel adequate preparation time and that appellant had not been allowed sufficient time to present her case during trial. The trial court denied this motion, ordered that the parties split the cost of the psychological evaluations and home studies, denied respondent's motion for legal costs of $803.70, and approved the transfer of physical custody of S. from appellant to respondent, which was to take place on July 10, 1987.

The following issues raised by appellant are of primary concern: (1) whether the trial court erred in admitting evidence regarding both the substantial change in appellant's circumstances and S.'s best interests, including changes in respondent's circumstances, thus failing to bifurcate the hearing; and (2) whether the court erred in awarding custody to respondent, absent specific factual findings.

Appellant raised numerous additional issues, including the following: (1) whether the trial court must provide written instructions to expert witnesses; and (2) whether the court abused its discretion by: (a) restricting appellant's proffered testimony; (b) reading depositions and reports which were not admitted into evidence; (c) refusing to grant a continuance to allow new-

---

1. Other evidence was admitted supporting Lindeman's conclusion: Although he did not testify at trial, Atila Dereli, a licensed psychologist associated with appellant's outpatient drug treatment program, prepared a written report, and stated that appellant was a caring person, and was willing to take care of other people and help them.

ly appointed attorneys to prepare for trial; (d) awarding custody to respondent, who admitted that he had intentionally violated prior court orders by hiding S. from appellant; and (e) refusing to allow new home studies.

Respondent asserts that the trial court erred in refusing to award him court costs.

At the outset, we note that under the well-established standard of review for child custody proceedings, we do not set aside the trial court's factual findings unless clearly erroneous, but give due regard to the opportunity of the trial judge to ascertain the witnesses' credibility. *Marchant v. Marchant*, 743 P.2d 199, 202 (Utah Ct.App.1987). A finding is clearly erroneous if it is against the great weight of the evidence or if we are otherwise definitely and firmly convinced that a mistake has been made. *Johnson v. Johnson*, 771 P.2d 696, 697 (Utah Ct.App.1989); *Power Systems and Controls, Inc. v. Keith's Elec. Constr. Co.*, 765 P.2d 5, 9 (Utah Ct.App.1988).

## BIFURCATION OF PROCEEDINGS

■ In an unbifurcated hearing, the judge considered evidence concerning both parents' changed circumstances, S.'s relationship with both parents, and additional evidence relevant to S.'s best interests. He found that there was a material change in appellant's circumstances because of the serious nature of her addiction, and that neither party had previously apprised him that appellant was a cocaine addict and respondent an alcoholic at the time of the divorce. He then orally found that a change of custody was in S.'s best interest. Appellant asserts that in following this procedure, the trial court erroneously failed to bifurcate the hearing pursuant to *Hogge v. Hogge*, 649 P.2d 51, 53–54 (Utah 1982) and *Becker v. Becker*, 694 P.2d 608, 610 (Utah 1984), thus improperly mingling evidence of appellant's changed circumstances and S.'s best interests, including respondent's changed circumstances, in the same hearing.

The Utah Supreme Court set forth in *Hogge* and later clarified in *Becker* a two-step procedure for modifying a custody order: (1) the party seeking custody must show that there has been a material change in the custodial parent's circumstances upon which the original custody award was based, and (2) once a change in circumstances has been shown, the transfer of custody must be in the child's best interests. *Hogge*, 649 P.2d at 53–54; *Becker*, 694 P.2d at 610. Usually,

> the noncustodial parent's change of circumstances is relevant only to a determination of whether, under the second prong of the *Hogge–Becker* test, the best interests of the child warrant a shift in custody, an issue reached only after a change of custodial circumstances has been found and the issue of custody has been reopened.

*Kramer v. Kramer*, 738 P.2d 624, 627 (Utah 1987).

In a recent decision, this court reasoned that if an initial custody award is based upon a thorough examination by the trial court of the various factors relevant to the child's welfare, a rigid application of the *Hogge–Becker* change in circumstances test is appropriate. *Maughan v. Maughan*, 770 P.2d 156, 160 (Utah Ct.App. 1989). In such a case, the court has already considered the child's best interests and fashioned the custody award accordingly. *Id.* Any subsequent petition for modification of custody must overcome the high threshold set forth in *Hogge* "to 'protect the child from "ping-pong" custody awards' and the accompanying instability so damaging to a child's proper development." *Id.* (quoting *Kramer*, 738 P.2d at 626.) If, however, the initial custody decree is unlitigated, e.g., where custody is obtained by default divorce or where the parties stipulate as to custody, then the trial court may focus the custody determination on the child's best interests. *Maughan*, 770 P.2d at 160. Subsequent to *Maughan*, the Utah Supreme Court followed this same line of reasoning in *Elmer v. Elmer*, 776 P.2d 599 (Utah 1989), holding that "in change of custody cases involving a nonlitigated custody decree, a trial court, in applying the changed circumstances test,

should receive evidence on changed circumstances and that evidence may include evidence that pertains to the best interests of the child." *Id.* at 605. In such cases, the res judicata purpose served by the *Hogge–Becker* test must be subservient to the child's best interests. *Id.* at 603.

> The stability with which the law is primarily concerned is not the stability of the legal custody arrangement as such, but rather the stability that makes possible the psychological and emotional security that underlies a child's well-developed sense of self-worth and self-confidence.... [This stability is a means of] promoting the ultimate objective, the overall best interests of the child.

*Id.* at 604 (citations omitted). In such cases, "[t]oo rigid an application of the [*Hogge–Becker* test] would lock a child into the custody of one parent or the other where there has been no determination on the merits of parenting ability of either parent and custody has been awarded only because of the default of one parent in failing to oppose the complaint of the other." *Id.* (quoting *Kramer*, 738 P.2d at 629 (Howe, J., concurring)). *Elmer* concludes, "In sum, we hold that in change of custody cases involving a nonlitigated custody decree, a trial court, in applying the changed-circumstances test, should receive evidence on changed circumstances and that evidence may include evidence that pertains to the best interests of the child." *Id.* at 605.

The initial custody determination in this matter was unlitigated, as was also the case in *Maughan* and *Elmer*, because it was stipulated to by the parties. Consequently, custody was not based upon an impartial judicial examination of S.'s best interests. In fact, evidence in the record indicates that the initial custody award to appellant was inimical to S.'s best interests, and its continuation could seriously jeopardize S.'s psychological, intellectual, and emotional development. Thus, a rigid application of the *Hogge–Becker* changed circumstances test, as urged by appellant, is inappropriate here.[2] Therefore, we find that the trial court did not commit error in receiving evidence pertaining not only to appellant's changed circumstances but also to S.'s best interests in a non-bifurcated hearing.

## FACTUAL FINDINGS

Appellant next argues that we should overturn the trial court's order because it made no specific finding that respondent was a fit and proper person to take custody of S.

This court requires that findings of fact (1) include enough facts to disclose the process through which the ultimate conclusion is reached, (2) indicate that the process is logical and properly supported, and (3) be not clearly erroneous. *Marchant*, 743 P.2d at 202–03. "A mere finding that the parties are or are not 'fit and proper persons to be awarded the care, custody, and control' of the child cannot pass muster when the custody award is challenged and an abuse of the trial court's discretion is urged on appeal." *Martinez v. Martinez*, 728 P.2d 994, 995 (Utah 1986) (per curiam). The trial court should state those factors it considered in making its determination, such as the needs of the child, the ability of each parent to meet

---

**2.** Taking a broader range of evidence than normally allowed under the changed-circumstances test is appropriate in this case for an additional reason and resolves a nagging dilemma for the trial court. Because the evidence establishing appellant's and respondent's respective addictions was also probative for determining S.'s best interests and the parties' respective parenting abilities, there was no effective way to bifurcate the hearing and strictly limit the evidence to that relating only to appellant's changed circumstances. Evidence regarding appellant's changed circumstances dealt primarily with her cocaine addiction and how its use impacted negatively upon her care of and relationship with S. and it is relevant to both changed circumstances and S.'s best interests. The expert witnesses presented evidence relevant to both appellant's changed circumstances and S.'s best interests which was so intertwined that bifurcation of the two issues would have done violence to an orderly, reasonable presentation, might have created confusion and misunderstanding, and would have resulted in further expense and inconvenience to the witnesses and the parties.

those needs, the parenting ability of the custodial parent, and the functioning of the established custodial relationship. *Myers v. Myers,* 768 P.2d 979, 983 (Utah Ct.App. 1989). "Failure of the trial court to make findings on all material issues is reversible error unless the facts in the record are 'clear, uncontroverted, and capable of supporting only a finding in favor of the judgment.'" *Acton v. J.B. Deliran,* 737 P.2d 996, 999 (Utah 1987) (quoting *Kinkella v. Baugh,* 660 P.2d 233, 236 (Utah 1983)).[3]

■ Although we find that the trial court did not err in failing to bifurcate the hearing, the supreme court has indicated that the trial court's "findings of fact should reflect that the court considered stability as a factor in the custody decision and the weight the court accorded it." *Elmer,* 776 P.2d at 605; *see also Paryzek v. Paryzek,* 776 P.2d 78, 81–84 (Utah Ct.App. 1989). The weight the trial court accords to the stability and continuity of the existing custodial relationship will depend upon the duration of the existing custody arrangement, the child's age, the nature of the developing relationship between the child and both parents, and how well the child is thriving physically, mentally and emotionally. *Elmer,* 776 P.2d at 604.

■ The trial judge orally found that a change of custody was in S.'s best interests but failed to make any specific factual findings supporting this conclusion. Therefore, even though the ultimate disposition seems abundantly reasonable under the circumstances, we are compelled to remand the case for entry of appropriate findings which clearly articulate the judge's considerations behind his finding that the change of custody is in S.'s best interests.

To reduce confusion and to lessen the possibility of an additional appeal, we address appellant's remaining issues.

## WRITTEN INSTRUCTIONS TO EXPERT WITNESSES

■ Appellant claims that the trial court erred in failing to provide written instructions to expert witnesses pursuant to Utah Rules of Evidence 706(a), which requires the expert witness to "be informed of his duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate." Our review of the record indicates that this alleged lack of written instructions was not objected to nor even mentioned at the time of trial. Further, there is no indication in the record as to what instructions, if any, were given to the expert witnesses. It is well established that we will not consider any issue raised for the first time on appeal. *Marchant v. Park City,* 771 P.2d 677, 682 (Utah Ct.App.1989) *appeal filed* 106 Utah Adv.Rep. 63 (1989). "A matter is sufficiently raised if it is submitted to the trial court, and the court is afforded an opportunity to rule on the issue." *State v. One 1979 Pontiac Trans Am,* 771 P.2d 682, 684 (Utah Ct.App.1989). The trial court was not given such an opportunity here, so we decline to address appellant's point.

## RESTRICTION OF PROFFERED TESTIMONY

■ Appellant asserts that the trial court abused its discretion in restricting some of her proffered testimony. Our review of the record reveals that the trial court disallowed the following proffered testimony: a letter from appellant's therapist on the basis that appellant had not timely provided it to respondent, and a home study performed by appellant's counselor at Terros on the basis that the counselor was not qualified as an expert. We will not reverse a trial court's determination on the admissibility of proffered evidence absent an abuse of discretion affecting a party's substantial rights. Utah R.Evid. 103; *see also State v. Jamison,* 767 P.2d 134, 137 (Utah Ct.App.1989); *State v.*

---

**3.** Oral findings of fact and conclusions of law made by the court when it rules from the bench    are sufficient. Utah R.Civ.P. 52(a).

*Aase,* 762 P.2d 1113, 1116 (Utah Ct.App. 1988). The trial court does not abuse its discretion in refusing to admit evidence which is not timely provided to the opposing party contrary to the court's instructions. Further, "[t]he matter of qualification of an expert witness lies in the discretion of the court." *State v. Locke,* 688 P.2d 464, 464 (Utah 1984) (per curiam) (footnote omitted); *see also State v. Eldredge,* 773 P.2d 29, 33–34 (1989); *State v. Wight,* 765 P.2d 12, 14 (Utah Ct.App.1988). Under the facts set forth in the record, we do not find any abuse of discretion on the part of the trial court.

## DEPOSITIONS NOT ADMITTED INTO EVIDENCE

▮▮▮ Appellant claims that the trial court abused its discretion by reading depositions and reports that it did not admit into evidence, Rudy Lema's deposition in particular,[4] suggesting that the trial court may have improperly based its decision upon them.

At the outset, we note that the trial judge, upon being questioned by appellant's counsel regarding this evidence, specifically disavowed relying on it much in his decision making process. He stated, "I read the deposition in its entirety, and I don't believe that's going to be a major factor in my decision. So, I will not allow it in, but even if it were allowed in I'm not giving it that much weight."

It is obvious that for the court to rule on the admissibility of the evidence in question, the court must be familiar with it, and, so, must read it. The law is well established that where the trial is to the court rather than to a jury, the court's rulings on evidence need not be subjected to as critical an inquiry because, in arriving at his conclusions, the judge will include in his consideration his knowledge and judgment as to the materiality, competency and effect of the evidence. *In re Estate of Baxter,* 16 Utah 2d 284, 399 P.2d 442, 445 (1965); *see also Del Porto v. Nicolo,* 27 Utah 2d 286, 495 P.2d 811, 814 (1972); *Super Tire Market, Inc. v. Rollins,* 18 Utah 2d 122, 417 P.2d 132, 136 (1966). In such cases, there is a presumption that the trial judge has disregarded all inadmissible evidence in reaching his decision. *Connolly v. Connolly,* 209 Mont. 298, 680 P.2d 568, 573 (1984). Appellant has not overcome this presumption, so we find that the trial court did not abuse its discretion here.

▮▮▮ Further, inquiry is not limited merely to whether or not an error may have been committed, but whether there is any "reasonable likelihood that the error affected the outcome of the proceedings." *State v. Verde,* 770 P.2d 116, 120 (Utah 1989). Our review of the record and the proffered evidence indicates that the disputed evidence was merely cumulative because the critical facts surrounding appellant's cocaine addiction and relationship with Lema, which were brought out in the disputed evidence, were also brought out in other evidence, including appellant's own testimony. Therefore, whether or not the judge erred in refusing to admit the depositions is immaterial.

## CONTINUANCE OF TRIAL

Appellant alleges that the trial judge abused his discretion in refusing to continue the trial to allow her new attorneys to prepare for trial.

▮▮▮ The granting of a continuance rests in the sound discretion of the trial court. *Miller Pontiac, Inc. v. Osborne,* 622 P.2d 800, 803 (Utah 1981). The judge's action in denying a continuance will not be reversed on appeal unless the court has

---

4. In his deposition, Lema testified that after the May 19, 1986 hearing, he visited appellant in Phoenix on four occasions. Each time, he brought large amounts of cocaine, which he and appellant used together. On one trip in late June, he and appellant spent three days and two nights in a hotel drinking alcohol and using cocaine. He also arranged through appellant to sell two ounces of cocaine to her brother.

Lema further testified that in September 1986, appellant requested that he mail cocaine to her boyfriend in Phoenix, and that appellant admitted that she had been using cocaine that night and that her boyfriend was a cocaine dealer. In Lema's opinion, appellant was addicted to cocaine in spite of the treatment program, and was "strung out and wanted to get more and more all the time."

abused that discretion by acting unreasonably. *Christenson v. Jewkes,* 761 P.2d 1375, 1377 (Utah 1988); *see also Patton v. Evans,* 92 Utah 524, 69 P.2d 969, 971 (Utah 1937).

In the present case, the judge had already continued the trial at appellant's request on one other occasion so that her new counsel could prepare the case. Further, prosecution of the case had been substantially delayed by appellant's dilatory conduct in failing to agree on expert witnesses and in failing to retain new counsel in a timely manner. The trial judge had made it clear to the parties on several occasions that he considered time to be of the essence, and that S.'s best interests required the resolution of the custody dispute in as short a time as possible. Under these circumstances, we do not find that the trial judge acted unreasonably in refusing to grant appellant another continuance to prepare for trial. We find this and appellant's remaining issues to be without merit.

### AWARD OF COSTS

Respondent asserts that, as the prevailing party, he should have been awarded costs totaling $803.70 for filing fees, witness fees, service fees, and reporter fees pursuant to Utah R.Civ.P. 54(d), which provides, in part, that "[e]xcept when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." This statute leaves the question of costs "somewhat in the discretion of the courts." *Hull v. Goodman,* 4 Utah 2d 163, 290 P.2d 245, 247 (1955). Further, in modification of divorce decrees pursuant to the continuing jurisdiction of the trial court set forth in Utah Code Ann. § 30–3–5 (1984), the question of the ability or inability of a party to pay costs in defending the matter is a factual matter which lies in the discretion of the trial court. *Anderson v. Anderson,* 13 Utah 2d 36, 368 P.2d 264, 266 (1962). There was substantial evidence set forth in the record as to appellant's precarious financial circumstances as compared to respondent's relatively prosperous situation to justify the trial court's refusal to award costs to respondent.

We affirm the trial court on these remaining issues and find that its failure to bifurcate the hearing was not reversible error. We remand, however, for adequate findings regarding the stability and continuity of appellant's custodial relationship with S. and S.'s best interests.

DAVIDSON and ORME, JJ., concur.