**Bard N. HOLBROOK, Plaintiff, Appellee, and Cross–Appellant,**

v.

**MASTER PROTECTION CORPORATION dba Firemaster, a California corporation; Robin D. Phillips; and John Does 1–20, Defendants, Appellant, and Cross–Appellee.**

No. 920216–CA.

Court of Appeals of Utah.

Sept. 30, 1994.

John T. Anderson (argued), Parsons, Behle & Latimer, Salt Lake City, for appellant.

Richard N. Bigelow (argued), Salt Lake City, for cross-appellant.

Before BENCH, JACKSON and ORME, JJ.

ORME, Associate Presiding Judge:

Briefly stated, the several issues on appeal here arise from a contractual relationship between the parties established pursuant to several related agreements. The franchisor, defendant Master Protection Corporation, a California corporation doing business as Firemaster ("Firemaster"), appeals from several adverse or allegedly inconsistent verdicts rendered at the conclusion of a jury trial. The franchisee, plaintiff Bard Holbrook, cross-appeals from the trial court's decision dismissing Holbrook's racketeering claim and awarding attorney fees to Firemaster for successfully defending that claim. Both parties complain about the implications of the jury's award of liquidated damages to Firemaster pursuant to the agreements, as well as the trial court's determination that neither party was the prevailing party for

## FACTS

Firemaster is engaged in the business of selling commercial and industrial fire prevention and suppression services through a network of dealers. Under a Territory Agreement dated June 30, 1987, Holbrook became an independent contractor for Firemaster, serving customers in Utah, Idaho, and Wyoming. Holbrook also signed a "Trade Secret Agreement" dated July 9, 1987, which contained a confidentiality provision restricting Holbrook's use of names, addresses, and the "service due" dates of Firemaster's customers.

In April of 1988, Holbrook's status changed to that of a franchisee pursuant to two separate franchise agreements executed by the parties. Franchise Agreement Number 1 established Holbrook as a franchisee for the Salt Lake City territory, and Franchise Agreement Number 2 granted Holbrook rights as a franchisee for the "Rural Utah and Idaho" territory. In order to purchase the franchises, Holbrook executed two promissory notes in the amounts of $70,000 and $40,000, respectively.[1] The two promissory notes were specifically incorporated by reference into the Franchise Agreements.

Holbrook performed services in accordance with the Franchise Agreements until a dispute arose as to the proper calculation of Holbrook's commissions. Unable to resolve the dispute, Holbrook terminated his franchise relationship with Firemaster in January 1990 and began his own business, in direct competition with Firemaster. Holbrook subsequently filed this suit against Firemaster to recover, *inter alia*, earned but unpaid commissions. On the several claims

purposes of awarding attorney fees. We affirm.

pursued by Holbrook, the jury returned the following special verdicts: (1) Firemaster breached paragraphs 4 and 8 of the Territory Agreement, and thus should pay Holbrook $5,889.35;[2] (2) Firemaster breached paragraphs 4 and 8 of the Franchise Agreements, and should pay Holbrook damages of $1.00 for each agreement breached;[3] (3) Firemaster was liable for conversion of Holbrook's earned but unpaid commissions in the amount of $30,032.71, and was also liable for punitive damages of $5,872.36 for its tortious conduct; (4) Firemaster breached the covenant of good faith and fair dealing and should pay Holbrook $50,000 in damages; and (5) Firemaster materially breached the agreements between the parties and therefore, Holbrook should be relieved of any further obligations under the agreements.[4]

The following special verdicts were entered on Firemaster's counterclaim: (1) Holbrook breached the confidentiality provisions of the Trade Secret Agreement, Territory Agreement, and Franchise Agreements and should pay Firemaster $10,000 as liquidated damages and (2) Holbrook was liable for conversion of Firemaster's supplies and materials and should pay Firemaster $5,271.47.

Additionally, the trial court awarded Firemaster attorney fees and costs of $8,124.50 for successfully defending against the racketeering claim. The trial court also dissolved a temporary injunction against Holbrook concerning use of Firemaster's customer lists upon requiring him to remit an "equitable payment" of $11,014 to Firemaster. The court, in view of the jury's determination that Holbrook should be relieved of any further obligations under the agreements, absolved him of further liability on the promissory notes. Also, although both parties claimed to be the prevailing party for purposes of

---

1. A third promissory note in the amount of $5,000, also signed by Holbrook, is not at issue.

2. Paragraph 4 of the Territory Agreement sets out obligations of the franchisee, such as the franchisee's agreement to render service to Firemaster customers, hire and properly train employees, and prepare and provide Firemaster with weekly invoices. Paragraph 8 sets out services that Firemaster agreed to provide the franchisee. *See* note 8.

3. Paragraphs 4 and 8 of the Franchise Agreements contain provisions substantially identical to paragraphs 4 and 8 of the Territory Agreement. *See* notes 2 and 8.

4. The jury issued verdicts of "no cause of action" for Holbrook's claims of fraud, misrepresentation, duress, and unjust enrichment. Additionally, the trial court dismissed Holbrook's claim premised on state and federal racketeering statutes.

awarding attorney fees for the breach of contract claims, the trial court found neither party to be the prevailing party for that purpose.

Both parties filed post-trial motions: Holbrook moved for judgment notwithstanding the verdict, and Firemaster moved for a new trial, an amendment of the judgment, and remittitur of the $50,000 award for breach of the covenant of good faith and fair dealing. The trial court denied the motions.

■ On appeal, Firemaster advances the following arguments: (1) the trial court erred in denying Firemaster's pre-trial motion for a continuance; (2) the trial court erred in not granting a new trial based on inconsistent and irreconcilable jury verdicts; (3) the jury award of $50,000 for breach of the implied covenant of good faith and fair dealing is not supported by the evidence; and (4) Holbrook should not be excused from further payment on the promissory notes.[5] . Holbrook cross-appeals, claiming: (1) the trial court erred in

dismissing Holbrook's racketeering claims and awarding Firemaster attorney fees in defending against those claims and (2) the trial court erred in denying Holbrook's motion to strike the jury's verdict awarding Firemaster $10,000 in liquidated damages for breach of Holbrook's confidentiality obligations.[6] We now consider these claims.

## DENIAL OF REQUEST FOR CONTINUANCE

■ Firemaster moved the court for a continuance, requesting an additional thirty-day postponement of the trial.[7] The motion was denied by the trial court, and the trial commenced as then scheduled. Notwithstanding a brief continuance granted Firemaster during trial, Firemaster now claims the trial court abused its discretion by denying its pretrial motion. We are not persuaded.

■ Granting a motion to continue a trial is within the trial court's discretion.

---

5. Firemaster also complains that Holbrook made an improper "Golden Rule" argument during closing argument, and that the trial court erred in not granting a permanent injunction against Holbrook's improper competition with Firemaster, requiring instead that plaintiff submit an equitable payment to Firemaster to dissolve the temporary injunction then in place. On the facts before us, we find no merit in these assertions and accordingly decline to address them. *See State v. Carter*, 776 P.2d 886, 889–90 (Utah 1989); *State v. Vigil*, 840 P.2d 788, 795 (Utah App.1992), *cert. denied*, 857 P.2d 948 (Utah 1993).

6. Holbrook also claims that Firemaster should be required to compensate him for expenses of the accounting services Holbrook incurred as a result of this litigation, that the trial court erred in not allowing Holbrook to put on evidence of profits lost while the temporary injunction was in effect, and that the award of punitive damages was artificially low due to rulings made by the trial court. As with Firemaster's claims, *see* note 5, we find no merit in these assertions and decline to address them further. *Carter*, 776 P.2d at 889–90; *Vigil*, 840 P.2d at 795.

Additionally, both parties claim to be the "prevailing party," and each claims to be thereby entitled to an award of attorney fees and costs. Each party relies on *Mountain States Broadcasting Co. v. Neale*, 783 P.2d 551 (Utah App.1989). Firemaster claims it is the "prevailing party" on the breach of contract claims, thus entitling it to attorney fees. Holbrook contends that based on the "net judgment" awarded him, he is entitled

to attorney fees. We need only observe that both parties' reliance on *Mountain States Broadcasting* is misplaced.

Attorney fees are allowable only as provided by contract or statute. *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988). Moreover, if a contract contains an attorney fee provision, the award of attorney fees is allowed only in accordance with the terms of that provision. *Id.* In the present case, some of the agreements at issue do not contain attorney fee provisions. Two contain indemnification provisions which refer to attorney fees among the listing of losses that are covered, but the provisions are inapplicable given the facts and the arguments advanced. The remaining agreements contain peculiar, essentially illusory attorney fee provisions which do not actually entitle a party to fees under stated conditions or require the court to award attorney fees. Instead, these provisions only obligate the parties to pay such attorney fees as the court might impose. Unlike the attorney fee provision in *Mountain States Broadcasting*, there is no "prevailing party" language requiring the trial court to determine which of the parties is entitled, by the express terms of the contract, to an award of attorney fees. Therefore, given the contractual provisions in question, it was not error for the trial court to decline to award fees.

7. Firemaster had previously moved for a continuance, requesting a sixty-day delay. The motion was granted in part, in that the original trial date was stricken and the trial was rescheduled for thirty days later than the original date.

Utah R.Civ.P. 40(b). Therefore, in determining whether the trial court abused its discretion, this court must review the reasonableness of the trial court's decision, *Bairas v. Johnson*, 13 Utah 2d 269, 373 P.2d 375, 377 (1962), and should not disturb the decision unless it was "clearly unreasonable and arbitrary." *Page v. Utah Home Fire Ins. Co.*, 15 Utah 2d 257, 391 P.2d 290, 293 (1964). *See Hardy v. Hardy*, 776 P.2d 917, 925–26 (Utah App.1989).

Firemaster based its motion on the fact that documents generated by Holbrook and his accountant (who was engaged specifically for the purpose of auditing Firemaster's records in view of the instant litigation) were not made available to Firemaster in a timely manner. Thus, Firemaster argues, it was prevented from determining the proper amount of commissions owed to Holbrook and from effective cross-examination of the accountant. We disagree.

The documents in question were tabulations and summaries of Firemaster's *own* accounting records, prepared by Holbrook's retained expert in preparation for trial. Based on the terms of the Franchise Agreements, Holbrook was required to submit his invoices and billing statements to Firemaster from which Firemaster was fully responsible for billing customers and collecting accounts receivable. It was from these invoices and billing statements that Firemaster presumably calculated Holbrook's commissions for the prior two and one-half years. Holbrook's accountant merely summarized Firemaster's own calculations of commissions paid to Holbrook. In other words, Firemaster was in possession, all along, of the documents Holbrook's accountant used, in preparation for trial, to determine what Holbrook should have been paid.

Firemaster's claim that it was disadvantaged by not being able to review Holbrook's "documents" is untenable. These documents were only summaries and extrapolations from Firemaster's own records. It is difficult to see how Firemaster, who was in control of the documents necessary to calculate proper payment, could have been "prejudicially unprepared to conduct an adequate cross-examination" of Holbrook's accountant

at trial. *Christensen v. Jewkes*, 761 P.2d 1375, 1378 (Utah 1988). Moreover, by reason of its concerns in this regard, Firemaster was granted two continuances—a thirty-day continuance prior to commencement of the trial and a brief continuance during trial. As a matter of admitted trial strategy, Firemaster's counsel expressly declined any interest in a longer continuance during trial. In light of the foregoing, we do not see how the trial court's decision can be regarded as unreasonable and arbitrary. Even if it were, we fail to perceive any prejudice of which Firemaster should now be heard to complain.

## INCONSISTENT AND IRRECONCILABLE VERDICTS

■ Both parties contend the jury's award of $10,000 to Firemaster for breach of the confidentiality provisions in the agreements, and the jury's special verdict precluding Firemaster from enforcing the non-competition and liquidated damages provisions of the agreements, are inconsistent and irreconcilable. Each party argues the inconsistent verdicts cannot stand and urges this court to strike the award favoring the other party. Firemaster argues that the more general findings of the jury suggesting that Holbrook should be released from any further obligations or performance under the agreements should give way to the more specific finding that Firemaster was entitled to enforce the confidentiality provisions of the agreements. Conversely, Holbrook insists the $10,000 award to Firemaster should be stricken because Firemaster breached the agreements first, thus precluding any recovery by Firemaster for Holbrook's subsequent breach of the confidentiality provisions. We are not convinced that reversible error exists in this regard.

It is not enough that the verdicts appear to be inconsistent. Rather, the verdicts must be both inconsistent *and* irreconcilable for this court to remand for a new trial or otherwise overturn the jury's verdicts. *See Alzado v. Blinder, Robinson & Co.*, 752 P.2d 544, 554 (Colo.1988). Moreover, the Utah Supreme Court has held that "[w]here the possibility of inconsistency in jury ... verdicts

exists, the courts will not presume inconsistency; rather they will seek to reconcile the answers if possible." *Bennion v. LeGrand Johnson Constr. Co.*, 701 P.2d 1078, 1083 (Utah 1985). *Accord Wright v. Westside Nursery*, 787 P.2d 508, 516 (Utah App.1990) (courts should endeavor to reconcile inconsistent verdicts). Review of the special jury verdicts indicates that it is, indeed, possible to reconcile them.

The special verdict form submitted to the jury specifically referred to the confidentiality provisions of the Territory and Trade Secret Agreements and both Franchise Agreements. The jury awarded Firemaster $10,000 for Holbrook's breach of those provisions. The jury decided that Firemaster's customer lists had independent economic value and that Holbrook had improperly used the lists for his benefit. Accordingly, the jury found Firemaster was entitled to damages for Holbrook's misuse of the customer lists, awarding Firemaster the $10,000 in liquidated damages called for in the agreements.

In contrast, the special verdict precluding Firemaster from enforcing the non-competition and liquidated damages provisions makes reference only to the Franchise Agreements. That is, the jury found that due to Firemaster's material breach of the Franchise Agreements, it was barred from enforcing the provisions of the Franchise Agreements. Thus, it was entirely possible for the jury to find that Firemaster was precluded from enforcing the provisions of the Franchise Agreements because of its prior breach, while still finding, pursuant to the Trade Secret Agreement and Territory Agreement, that Holbrook violated the confidentiality provisions contained therein. Accordingly, we do not agree that the verdicts are irreconcilable.

### $50,000 AWARD FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

■ Firemaster argues the jury award of $50,000 for breach of the covenant of good faith and fair dealing was not supported by the evidence. We are not persuaded.

■ Juries are permitted wide discretion in awarding damages, and courts must accord considerable deference to the jury's determination. *Bennion v. LeGrand Johnson Constr. Co.*, 701 P.2d 1078, 1083 (Utah 1985). *Accord Brown v. Richards*, 840 P.2d 143, 153 (Utah App.1992), *cert. denied*, 853 P.2d 897 (Utah 1993). Thus, a jury's award of damages should not be disturbed "unless (1) the jury disregarded competent evidence, (2) the award is so excessive beyond rational justification as to indicate the effect of improper factors in the determination, and (3) the award was rendered under a misunderstanding." *Brown*, 840 P.2d at 153. Firemaster has failed to convince us of any such error which would warrant setting aside the jury's verdict.

Firemaster's obligation on appeal in challenging the jury award is to " 'marshal all the evidence supporting the verdict and demonstrate that, even viewing the evidence in the light most favorable to that verdict, the evidence is insufficient to support it.' " *Wright v. Westside Nursery*, 787 P.2d 508, 512 (Utah App.1990) (quoting *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985)). Firemaster undertakes to marshal the evidence, but in essence limits its analysis to the theory that the $50,000 award was intended to compensate Holbrook for administrative fees paid to Firemaster for various services it was obligated to provide pursuant to Paragraph 8 of the Franchise Agreements but failed to provide.[8] From this premise, Firemaster argues that the $50,000 award is unfounded because there was no evidence that Holbrook did not receive any Paragraph 8 services not already compensated for by the jury. *See* notes 2 and 3 and accompanying text.

Our review of the pertinent portions of the voluminous record does not indicate the jury award was intended to compensate Holbrook for Paragraph 8 services paid for but never received. We note that in his second amended complaint, the facts alleged by Holbrook

---

8. The paragraph 8 services consisted of administrative services such as bookkeeping, accounting, advertising, collection of accounts receivable, sales assistance, access to customer lists, equipment, inventory and service documenting, telephone answering, and mail handling.

concerning breach of the covenant of good faith and fair dealing refer to a number of misdeeds, but there is no mention of Paragraph 8 services. Moreover, the scheme of the special verdict forms submitted to and completed by the jury contradicts Firemaster's position. For instance, Firemaster's failure to provide Paragraph 8 services was specifically addressed in the verdict forms dealing with Holbrook's damages based on breach of the express provisions of the Franchise Agreements. The jury awarded Holbrook $1.00 for Firemaster's breach of each of the Franchise Agreements for, *inter alia*, "failure to provide Paragraph ... 8 services," and $5,889 for breach of the Territory Agreement on the same basis.

In contrast, the special verdict form submitted on the question of good faith and fair dealing inquired more generally whether Firemaster's conduct constituted a breach of the implied covenant of good faith and fair dealing owed to Holbrook. In spite of Firemaster's assiduous reference to Paragraph 8 services, there simply is nothing we have found in the record or special verdict forms indicating the jury intended the $50,000 award to Holbrook to compensate for Firemaster's failure to provide Paragraph 8 services.

Having rejected Firemaster's Paragraph 8 services argument, this court declines to speculate as to the evidentiary basis for the $50,000 award or to independently sift through the literally thousands of pages of the record to ascertain the basis for the award. *See Wright*, 787 P.2d at 512 n. 2. "The very purpose of such devices as the 'marshaling' doctrine ... is to spare appellate courts such an onerous burden ... [and] our review of the record is limited to those specific portions of the record which have been drawn to our attention by the parties and which are relevant to the legal questions properly before us." *Id.*

Firemaster has not demonstrated that the $50,000 award is flawed because it was based on Paragraph 8 services paid for but not

received, something for which Holbrook had already received an award.[9] Nor have we been otherwise persuaded that the $50,000 award is not supported by the evidence.

## DISCHARGE OF THE PROMISSORY NOTES

■ Firemaster asserts the trial court erred in refusing to enforce the promissory notes executed by Holbrook. We disagree.

In conjunction with the purchase of Firemaster franchises, Holbrook executed promissory notes, which were specifically incorporated by reference into the Franchise Agreements. Upon termination of the Franchise Agreements by Holbrook due to Firemaster's breach, Holbrook discontinued payments on the notes. Notwithstanding the termination of the franchise relationship, Firemaster contends it is entitled to judgment on the promissory notes given by Holbrook.

■ The law is well settled that a material breach by one party to a contract excuses further performance by the non-breaching party. *See Saunders v. Sharp*, 840 P.2d 796, 806 (Utah App.1992); *Wright v. Westside Nursery*, 787 P.2d 508, 516 (Utah App.1990). Also, a party seeking to enforce a contract must prove performance of its own obligations under the contract. *Malot v. Hadley*, 86 Or.App. 687, 740 P.2d 804, 805–06 (1987). *See Bell v. Elder*, 782 P.2d 545, 548 (Utah App.1989). The jury concluded that Holbrook fully performed his obligations under the Franchise Agreements. In contrast, Firemaster was found to have materially breached the Franchise Agreements, thereby losing its right to enforce them against Holbrook. As the Franchise Agreements specifically incorporated the promissory notes, the notes are an integral part of the Franchise Agreements. Therefore, given Firemaster's material breach, Holbrook was properly excused from continued payment on the promissory notes.

9. It should be noted that considerable care seems to have gone into the jury's analysis of the whole matter of Paragraph 8 services. A rather precise figure, $5,889.35, was selected as damages for such services due but not rendered under the

Territory Agreement. Moreover, for the apparent purpose of avoiding duplication, the jury limited the award for breach of equivalent provisions under the Franchise Agreements to $1.00 each.

## RACKETEERING

One of the many claims asserted by Holbrook against Firemaster was a claim alleging violation of Utah's Pattern of Unlawful Activity Act ("UPUA"), Utah Code Ann. §§ 76–10–1601 to –1609 (1990 & Supp.1993), as well as the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 to 1968 (1984 & Supp.1993). The trial court dismissed Holbrook's claim under UPUA for the reason that the choice of law provision contained in the Franchise Agreements, namely a provision indicating California law would apply to disputes arising from the Franchise Agreements, rendered UPUA inapplicable.[10] While the trial court's exact reasoning is questionable, the result is correct.

To sustain a claim of racketeering under UPUA, two elements must be met. The party alleging violation of UPUA must show that (1) the defendant is engaged in a pattern of unlawful activity and (2) the defendant is involved in an enterprise. Utah Code Ann. § 76–10–1603 (1990). Additionally, UPUA requires the pleading to be made with particularity. *Id.* § 76–10–1605(7). In this case, Holbrook failed to plead with particularity facts establishing Firemaster's pattern of unlawful activity.

The Utah racketeering statute requires that the underlying unlawful activity be alleged with particularity in order for the court to determine whether the facts as pleaded "are sufficient to show that the alleged activity would be illegal in Utah and would fall into one of the enumerated categories [of Utah Code Ann. § 76–10–1602(4) (1990) ]." *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Trust Co.,* 558 F.Supp. 1042, 1047 (D.Utah 1983). *See also State v. Bell,* 770 P.2d 100, 104–05 (Utah 1988) (indictment which merely recited language of racketeering statute did not sufficiently describe facts or circumstances of crime charged). Moreover, the facts set forth in the pleadings must establish not only unlawful conduct, but a pattern of unlawful

activity as opposed to an isolated incident. *Grant v. Union Bank,* 629 F.Supp. 570, 577–78 (D.Utah 1986); *Alta Indus. Ltd. v. Hurst,* 846 P.2d 1282, 1288 (Utah 1993).

Applying the foregoing standards to the present case, Holbrook did not sustain his burden to plead with particularity any unlawful conduct, let alone a pattern of unlawful activity. In his second amended complaint, Holbrook provides an extensive list of alleged improprieties committed by Firemaster. This list, however, merely summarizes what appears to be every invoice generated by Holbrook during 1988 and 1989. These invoices purport to show a pattern of unlawful activity, but each recitation simply restates the same facts alleged throughout his complaint: Firemaster improperly computed commissions owing to Holbrook and thereby underpaid him. However, improper payment of commissions is not recognized in the statute as an unlawful activity. *See* Utah Code Ann. § 76–10–1602(4) (1990). The trial court thus properly dismissed the racketeering claims.

Having dismissed the racketeering claim under UPUA with prejudice, the trial court did not err in awarding Firemaster attorney fees in successfully defending against the claim. Utah Code Ann. § 76–10–1605(2) (1990) expressly provides "[a] party who prevails on a cause of action brought under this section recovers the cost of the suit, including a reasonable attorney's fee." *Id.* As Firemaster was the prevailing party on the UPUA claim, it was entitled to the award of its attorney fees.

## CONCLUSION

For the foregoing reasons, both the jury's verdicts and the trial court's rulings must be sustained. We affirm.

BENCH and JACKSON, JJ., concur.

---

10. The RICO claim was also dismissed with prejudice, with no further explanation. We follow the lead of the trial court and of the parties on appeal in assuming the UPUA and RICO claims rise and fall together, while focusing analysis all but exclusively on UPUA.