STATE of Utah, Plaintiff and Appellee,

v.

Douglas R. **ALBRETSEN**, Defendant and Appellant.

No. 880154.

Supreme Court of Utah.

Oct. 25, 1989.

**516**

Debra K. Loy, Joan C. Watt, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

HOWE, Associate Chief Justice:

Defendant Douglas R. Albretsen appeals from convictions of aggravated burglary, a first degree felony, in violation of Utah Code Ann. § 76–6–203 (1978), and theft, a second degree felony, in violation of Utah Code Ann. § 76–6–404 (1978).

On May 11, 1987, Maureen Leavitt returned home from work at approximately 5:30 to 5:45 p.m. After entering her house, she walked down the hall leading from the family room to the kitchen. As she approached the end of the hallway, a man with a club raised in his hand suddenly stepped in front of her; he was approximately two feet away. They looked at each other for approximately three seconds before he started beating her with the club, leaving her unconscious. She suffered extensive injuries and was hospitalized for two days.

On May 14, 1987, Leavitt identified defendant as her attacker from a black loose-leaf binder containing 30 to 50 mug shots given her by Detective Hutchison. Upon making this identification, she stated to her husband, "This looks like the man that beat me." The next day, Detective Hutchison showed Leavitt a display of six photos mounted on a piece of cardboard. She again selected the photograph of defendant. After defendant's arrest, Leavitt attended a lineup where she again identified him as her assailant.

Several months prior to trial, defendant filed a notice of intent to rely on the defense of alibi, as required by Utah Code Ann. § 77–14–2(1) (1982). He listed Brenda Davis and Cindy Edwards as alibi witnesses. The State filed its reply to the notice, listing Detective Hutchison as a rebuttal witness.

At the trial, the prosecutor moved for admission of the six-picture photo display, as well as the mug shots of defendant which he had removed from the black binder and had altered by masking the booking references which appeared at the bottom. Defendant did not object to the admission of the photo display, and it was admitted. However, he did object to the mug shots on the ground that they were inherently prejudicial and because of the masking, which he argued would raise the jury's curiosity and suspicion. The court overruled the objection and admitted the mug shots to show one source of Leavitt's identification. On cross-examination, defendant's counsel had Leavitt repeat that when she identified defendant from the loose-leaf binder, she told her husband: "This looks like the man that beat me." Then, defense counsel questioned Leavitt about her identifications of the photographs.

Several months prior to trial, Detective Hutchison obtained a handwritten statement from Brenda Davis in which she claimed that defendant was with her at the time of the crime. Davis wrote that they had "gone up into the mountains for a ride, into Parley's Way and Emigration Canyon." At the trial, however, she testified in detail as to the route taken on the ride. After the defense rested, the prosecution informed the court that he anticipated some rebuttal and requested a recess in order to locate a Mr. Miller from the Utah Department of Transportation, who he believed would testify that the route claimed to have been taken by defendant and Brenda Davis was closed to traffic on May 11, 1987. Defense counsel objected to the recess and moved that evidence be closed at that time. The court denied the motion, and Mr. Miller was later allowed to testify over defendant's objection.

I

Defendant first contends that the trial court committed prejudicial error in admit-

ting mug shots of him. He argues that they suggested prior criminal activity, which suggestion was exacerbated by the masking of the booking reference. He relies upon rules 403 and 404(b), Utah Rules of Evidence.

Although this Court has never determined whether mug shots are admissible to corroborate identification testimony, rule 404(b) of the Utah Rules of Evidence states:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, *identity*, or absence of mistake or accident.

(Italics added.) However, even if evidence of prior wrongdoing is admissible under that rule, such evidence may be excluded under rule 403, which states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Thus, if the probative value of the evidence is not substantially outweighed by the danger of prejudice, the scales are tipped in favor of admission.

■ In the instant case, the lower court correctly ruled that the mug shots were admissible for purposes of establishing identity. Even though we recognize that under rule 403, they could still be excluded, the mug shots here were crucial in establishing the identity of defendant, which was the main issue. They were the initial source of Leavitt's identification, and they explained her reaction when she identified him as her attacker. Also, admitting the mug shots served to rebut defendant's theory that later identifications by her were connected to the mug shots rather than to the attacker.

In a similar case, the testimony of a manager of a store that he recognized the defendant from police photographs or "mug shots" as the person for whom a money order had been cashed was held admissible on issue of identification. *State v. Owens*, 15 Utah 2d 123, 388 P.2d 797 (Utah 1964). Similarly, in *State v. Jiron*, 27 Utah 2d 21, 22, 492 P.2d 983, 984 (Utah 1972), this Court decided that "evidence of an extra-judicial identification is admissible, not only to corroborate an identification made at the trial [citation], but as independent evidence of identity." (Quoting *People v. Gould*, 54 Cal.2d 621, 626, 354 P.2d 865, 867, 7 Cal.Rptr. 273, 275 (1960).)

During the trial, defendant argued that Leavitt had "difficulties with identification" based on her statement, "This looks like the man that beat me." Thus, the mug shots were valuable in showing that while they were somewhat outdated, they nevertheless were identifiable likenesses of defendant. The jury was not equipped to decide whether Leavitt's identification was faulty without viewing the mug shots she used to identify him. The jury as the trier of fact had the duty of determining from the proof presented, which in this case included the mug shots, whether Leavitt's identification was reliable.

A Michigan court correctly observed in a similar case:

> [I]t would be better if the jury was not allowed to see mug shots of the defendant. However, where, as here, defense counsel has made an issue of the witness's ability to recognize the defendant from the picture he was shown by the police, it was not improper for the trial court to admit the photos.

*People v. Travier*, 39 Mich.App. 398, 402, 197 N.W.2d 890, 892 (1972).

■ We next address whether the procedures used by the trial court to minimize any possible prejudicial effect of the mug shots were proper and effective, i.e., taping over the booking references. Although the State had a demonstrable need to introduce the mug shots to establish identity, the trial court nevertheless erred in not cutting off the reference at the bottom. When suggestive material is masked, the curiosity of the jury is increased. Trial courts

should employ safeguards to disguise the origin of police photographs, including the removal of police identification numbers, *United States v. Watts,* 532 F.2d 1215, 1217 (8th Cir.), *cert. denied,* 429 U.S. 847, 97 S.Ct. 131, 50 L.Ed.2d 119 (1976), and separating the combined profile and frontal views characteristic of mug shots. *Id.* Since Leavitt additionally identified defendant from the six-picture photo display as well as in a lineup, we do not find the error to have been prejudicial to defendant.

## II

■ Defendant next assails the trial court's failure to sustain his objection to the admission of testimony by the State's rebuttal witness, Richard L. Miller, which admission defendant asserts violated Utah Code Ann. § 77–14–2 and denied him due process. That section provides:

> 77–14–2. Alibi—Notice requirements—Witness lists. (1) A defendant, whether or not written demand has been made, who intends to offer evidence of an alibi shall, not less than ten days before trial or at such other time as the court may allow, file and serve on the prosecuting attorney a notice, in writing, of his intention to claim alibi. The notice shall contain specific information as to the place where the defendant claims to have been at the time of the alleged offense and, as particularly as is known to the defendant or his attorney, the names and addresses of the witnesses by whom he proposes to establish alibi. The prosecuting attorney, not more than five days after receipt of the list provided herein or at such other time as the court may direct, shall file and serve the defendant with the addresses, as particularly as are known to him, of the witnesses the state proposes to offer to contradict or impeach the defendant's alibi evidence.

> (2) The defendant and prosecuting attorney shall be under a continuing duty to disclose the names and addresses of additional witnesses which come to the attention of either party after filing their alibi witness lists.

> (3) If a defendant or prosecuting attorney fails to comply with the requirements of this section, the court may exclude evidence offered to establish or rebut alibi. However, the defendant may always testify on his own behalf concerning alibi.

> (4) The court may, for good cause shown, waive the requirements of this section.

In her handwritten statement given the police, Brenda Davis stated that she and defendant had, on the day of the crime, "gone up into the mountains for a ride into Parley's Way and Emigration Canyon." However, when she testified at the trial, she described the exact route they took, stating that they drove up Parley's Canyon (not Parley's Way, which is a different street), took the turnoff to East Canyon and followed that highway to the turnoff to Emigration Canyon and then came down Emigration Canyon, which brought them back to Salt Lake City. Miller, an engineer for the Utah Department of Transportation, testified, over defendant's objection, that from April 13 to June 17, 1987, SR–65, the highway which Davis claimed that they took linking Parley's Canyon and Emigration Canyon, was closed to traffic.

Defendant asserts that the trial court should not have allowed Mr. Miller to testify since the prosecuting attorney did not notify defendant prior to trial of its intent to have Miller testify to contradict and impeach defendant's alibi evidence, as required by section 77–14–2(1). We find no error in view of the fact that the State could not have reasonably anticipated the discrepancy between Davis's handwritten statement and her later testimony at trial. Inasmuch as there was a significant change in the route claimed to have been taken, the trial court reasonably allowed the prosecution to add to its rebuttal list when this evidentiary development occurred in the course of trial. The trial court acted within the discretion accorded by section 77–14–2(4), which provides, "The court may, for good cause shown, waive the requirements of this section." The prosecutor acted in good faith when he apprised defense counsel of the possible

rebuttal testimony as soon as its need was discovered. The Montana Supreme Court, in *State v. Madera*, 206 Mont. 140, 670 P.2d 552, 556 (1983), held that discretion should be given to "the District Court to permit additions to the witness list when good cause is shown; good cause must certainly be construed to include the amendment of the witness list because of evidentiary matters developed during the presentation of the case of either party, matters which require clarification or rebuttal by that party."

Defendant's convictions are affirmed.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.