Julie Anderson TURNER, Plaintiff and Appellant,

v.

Amy NELSON, Defendant and Appellee.

No. 920195.

Supreme Court of Utah.

March 30, 1994.

John E. Hansen, Salt Lake City, and John W. Anderson, Tulsa, Oklahoma, for Turner.

Robert L. Stevens, Salt Lake City, for Nelson.

ZIMMERMAN, Chief Justice:

Plaintiff Julie Anderson Turner appeals from a jury verdict for defendant Amy Nelson on Turner's negligence claim. Turner contends that the trial court abused its discretion by not allowing her to call a "rebuttal" witness whom she had not listed on her pretrial designation of witnesses. She further asserts that the trial court erroneously allowed Nelson to add a nonparty, Salt Lake City, to the verdict form in order to have the jury apportion its fault. We affirm the trial court.

This action arises from an automobile accident. On July 6, 1989, Turner was traveling west on Third Avenue near the Canyon Road intersection in Salt Lake City. At about the same time, Nelson was driving north on Canyon Road. Turner contends that Nelson failed to heed the "Stop Ahead" warning sign and then ran the stop sign at the intersection of Canyon Road and Third Avenue. Nelson's vehicle hit Turner's vehicle on the front left quarter-panel. Turner suffered physical injuries as a result.

Turner served Nelson with a complaint alleging negligence on March 27, 1991. Nelson answered the complaint and denied any negligence. Her answer claimed, among other things, that Turner was contributorily negligent and that Turner's injuries were caused by the negligence of unnamed third parties. Soon thereafter, discovery commenced.

The trial court issued a scheduling order setting February 20, 1992, as the discovery cutoff date. The order required both parties, by February 14th, to exchange designations of the witnesses they planned to call at trial. Although Nelson complied with that order, Turner filed her designation on February 19th, five days late. On February 26th, Nelson filed a "Motion for Apportionment of Fault of Salt Lake City" and an accompanying memorandum. She sought to include Salt Lake City on the verdict form for apportionment purposes, even though it was not a defendant. Over Turner's objection, the trial court granted the motion.

At trial, Turner presented evidence tending to show that Nelson had been negligent in failing to heed the stop sign. Conversely, Nelson contended in opening arguments and throughout trial that Salt Lake City was at fault because it "had negligently designed" the intersection and because it allegedly had allowed the stop sign to become obstructed and perhaps bent, making the sign difficult to see. The jury returned a verdict of no negligence on the part of Nelson, from which Turner appeals.[1]

---

1. The special verdict form instructed the jury as follows:

> Please answer the following questions from a preponderance of the evidence. If you find the evidence preponderates in favor of the issue presented, answer "Yes." If you find that the evidence is so equally balanced that you cannot determine a preponderance of the evidence, or if you find that the evidence preponderates against the issue presented, answer "No." Also, any damages assessed must be proven by a preponderance of the evidence.

1. Considering all of the evidence in this case, do you find from a preponderance of the evidence that the defendant, Amy Nelson, was negligent as alleged by the Plaintiff?

The form provided a space for the jury to check either "Yes" or "No." The jury marked the "No" box. The form also contained several other questions relating to, inter alia, proximate cause and the negligence of Turner and Salt Lake City. The form, however, required the jury to answer these questions only if it found that Nelson had been negligent. Because it did not so find, the jury never reached these issues.

Turner's first contention on appeal is that the trial court abused its discretion by refusing to allow the testimony of her "rebuttal" witness, Jim Nakling. Turner acknowledges that Nakling was not listed on her pretrial designation of witnesses. She asserts, however, that the need for Nakling's rebuttal testimony became apparent only after trial began, a fact that justified the admission of his testimony.

Specifically, Turner contends that she was surprised by defense counsel's statements during his opening remarks that the sign had been partially obstructed and that Salt Lake City, not Nelson, was really at fault. On the evening of the first day of trial, Turner's counsel made an effort to find a witness to testify that the sign had not been obstructed. That same evening, counsel found Nakling walking near the accident site. Nakling had lived near the relevant intersection for the past ten years. He purportedly was prepared to testify that he had walked his dog by the intersection twice a day and the stop sign was not obstructed at the time of the accident.

On the morning of the second day of trial, Turner moved the court to allow Nakling's testimony, and Nelson opposed that motion. The court did not rule on the motion at that time. On the third day of trial, Turner attempted to call Nakling as a rebuttal witness, effectively renewing the motion. Turner argued that the testimony was properly admissible to rebut Nelson's "new" contentions that the sign was obstructed and perhaps had been replaced with a larger sign since the accident and that Salt Lake City was actually at fault. The court refused to allow the testimony, stating:

I am persuaded that the motion to call the new witness should be and is denied, and my reasoning is as has been stated by [Nelson's counsel], but moreover, it has been the essential defense here that the sign was obstructed, thereby limiting the Defendant's opportunity to timely observe it and take appropriate action. That aspect of [Guertz's] testimony is not new, and my decision to allow Salt Lake City on the verdict form for purposes of apportionment of the responsibility here does not change the essential defense that the sign was obstructed. . . . [I]t seems to me that [allowing the testimony in at this point in the trial] puts [Nelson] at an unfair disadvantage, not knowing who this individual is and [not] having had the opportunity to cross-examine or at least depose this witness, while as Mr. Guertz [Nelson's expert] was available and notified in a timely fashion as far as the opposition was concerned, that he would be testifying. I am therefore persuaded that it would place [Nelson] in an unfair posture to grant this motion and it's denied.

Turner then proffered what Nakling would testify to and sought a continuance to allow Nelson an opportunity to depose Nakling. The court denied the request and again refused to allow the testimony.

■ The issue before us is whether the trial court abused its discretion in refusing to allow Nakling's testimony. We will not reverse the trial court unless the appellant demonstrates that the trial court has clearly abused its discretion and thereby affected the appellant's substantial rights. *See* Utah R.Evid. 103; *State v. Albretsen*, 782 P.2d 515, 518–19 (Utah 1989); *Hardy v. Hardy*, 776 P.2d 917, 924 (Utah Ct.App.1989); *accord In re Estate of Gardner*, 31 Colo.App. 361, 505 P.2d 50, 52 (1972); *King Pest Control v. Binger*, 379 So.2d 660, 663 (Fla.Dist.Ct.App. 1980).

■ As a threshold matter, it is well within a trial court's authority to order the parties to disclose all potential witnesses in advance of trial. *See Arnold v. Curtis*, 846 P.2d 1307, 1310 (Utah 1993); *Hardy*, 776 P.2d at 924–25. Such disclosure serves a number of significant purposes. *See, e.g., Kott v. City of Phoenix*, 158 Ariz. 415, 763 P.2d 235, 238 (1988). It gives both parties the opportunity to prepare adequately for trial, including, among other things, deposing witnesses, investigating witnesses' testimony, and preparing an effective cross-examination. *See, e.g., Gardner*, 505 P.2d at 52. It also encourages the parties to make a serious effort to investigate the facts and discover all relevant witnesses in a timely manner. Finally, it furthers the orderly and efficient administration of justice by avoiding trial

delays which might otherwise be necessary to accommodate the need to prepare for a surprise witness.

■ Given these significant policies, a trial court does not abuse its discretion by refusing to allow a party to call a surprise witness absent "good cause" for the failure to disclose the witness as required by a court order or rule.[2] *See Arnold,* 846 P.2d at 1310; *Hardy,* 776 P.2d at 925. When the offering party contends that the undisclosed witness is necessary to rebut the adverse party's evidence, the issue hinges on whether the evidence "sought to be rebutted *could reasonably have been anticipated prior to trial.*" 75 Am.Jur.2d *Trial* § 371, at 570 (1991) (emphasis added); *see, e.g., Albretsen,* 782 P.2d at 518;[3] *King Pest Control,* 379 So.2d at 663.

Turner offered Nakling's testimony for the express purpose of contradicting Nelson's evidence that the sign was obstructed and perhaps bent. Turner contends that because Nakling's testimony was intended to rebut this "new, unforeseen" argument, the trial court abused its discretion in failing to allow the testimony. Turner's claim hangs on whether she "could reasonably have antici-

pated" the testimony of Nelson and Nelson's witnesses that the sign was obstructed.

In deciding this issue, the trial court had all of the evidence before it and was in the best position to determine whether Turner could reasonably have anticipated the obstructed-sign testimony. As noted earlier, the trial court indicated that the testimony regarding the obstructed stop sign was "not new" and Nelson's "essential defense" had always been that the sign was obstructed. Although the trial court did not specifically say that Turner "could reasonably have anticipated" the testimony, the thrust of the court's ruling is clear—Nelson's evidence was foreseeable.

■ As appellant, Turner has the burden of showing that the trial court erred in determining that the "new testimony" could have been anticipated. To meet this burden, she must provide this court with a complete record of all evidence relevant to the alleged error. Utah R.App.P. 11(e)(2).[4] In the absence of a complete record "we assume that the proceedings at trial were regular and proper." *Bevan v. J.H. Constr. Co.,* 669 P.2d 442, 443 (Utah 1983); *see Smith v. Vuicich,* 699 P.2d 763, 765 (Utah 1985); *Stephens v.*

2. The present case is distinguishable from *Board of Education v. Barton,* 617 P.2d 347 (Utah 1980). In *Barton,* the defendant alleged that the trial court had abused its discretion in allowing the plaintiff to call a witness not listed in the pretrial order. *Id.* at 349. This court held, however, that the pretrial order, by its terms, *had expressly indicated* that it did not require the disclosure of rebuttal witnesses, and thus, it was not improper to allow the testimony. *Id.*

In contrast, the pretrial order in the present case required the parties to list all witnesses, without differentiating between case-in-chief and rebuttal witnesses. Similarly, neither party's designation of witnesses distinguished between types of witnesses.

3. For example, in *State v. Albretsen* the court applied the "reasonably anticipated" test to the question of undisclosed rebuttal testimony in a criminal trial. 782 P.2d 515, 516–18 (Utah 1989). In that case, the prosecution obtained a handwritten statement from the defendant's alibi witness, Ms. Davis, several months prior to trial. *Id.* at 516. Davis indicated in her statement that she and the defendant had driven up a local canyon into the mountains at the time of the crime; she did not, however, give any specific details regarding the drive. *Id.* Nevertheless, at

trial Davis testified regarding the precise route she and the defendant had allegedly taken during their ride. *Id.* at 518. After her testimony, the prosecution introduced the testimony of a state engineer who testified that the route Davis claimed to have taken was impassible during the time in question. *Id.* The defense objected to the testimony, relying on a Utah law that requires the prosecution, once it has been notified of the defense's intent to offer alibi evidence or testimony, to inform the defense prior to trial of witnesses the State proposes to offer to contradict or impeach the defendant's alibi testimony. *Id.; see* Utah Code Ann. § 77–14–2(1). The trial court allowed the State's testimony, and the defendant was convicted. On appeal, this court held that the trial court had not abused its discretion in allowing the testimony "in view of the fact that the State *could not have reasonably anticipated* the discrepancy between Davis's handwritten statement and her later testimony at trial." *Albretsen,* 782 P.2d at 518 (emphasis added).

4. "If the appellant intends to urge on appeal that a finding or conclusion is unsupported by or is contrary to the evidence, *the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.*" Utah R.App.P. 11(e)(2) (emphasis added).

*Schwendiman,* 688 P.2d 466, 467 (Utah 1984); *Sampson v. Richins,* 770 P.2d 998, 1002 (Utah Ct.App.1989).

In the present case, Turner has failed to provide this court with the necessary evidence. She has not included in the record or with her briefs copies of depositions, Nelson's answers to interrogatories, or other evidence that could support Turner's claim that Nelson's evidence was new. This court must therefore assume that the trial court was correct in its statement that Nelson had asserted all along that the stop sign was obstructed and the intersection poorly designed and, by implication, that Salt Lake City was negligent.

Moreover, the record seems to support Nelson's assertion that Turner knew or should have reasonably anticipated that Nelson would claim the sign was obstructed.[5] In fact, the record suggests that if Turner failed to appreciate the extent of Nelson's reliance on this defense, it was probably because of Turner's earlier failure to depose adequately several adverse witnesses.

Nelson presented the evidence of at least three witnesses, including herself, that the sign was obstructed and the intersection poorly designed. Nelson testified at trial that she was unable to see the stop sign until just prior to entering the intersection because the sign was partially obstructed by foliage. Nelson also presented the testimony of Mr. Rusk, a witness to the accident. Rusk testified that at the time of the accident, the stop sign was bent and partially obscured by the limbs of a nearby tree.

Nelson further introduced the expert testimony of Mr. Guertz, who before his retirement was a "traffic design expert" with the Utah Department of Transportation. Guertz testified that the intersection was designed poorly for a variety of reasons and that the stop sign might have been replaced or moved since the accident.

Nelson's counsel had listed Guertz, Rusk, and Nelson on their designation of witnesses and had made them available for deposition. Turner made no attempt to depose Guertz or, as far as we can tell from the record before us, determine through written interrogatories the content of his testimony. Rusk apparently was deposed by Nelson, and Turner was properly notified of that deposition. It is unclear, however, whether Turner's counsel chose to attend the deposition or examine Rusk. Finally, Nelson was deposed by Turner and during that deposition reportedly indicated that the stop sign had been partially obstructed. Once again, because Turner has not provided us with a complete record, we have no way of verifying this statement.[6]

Similarly, Turner's argument on appeal that Salt Lake City's inclusion on the special verdict form created the necessity for Nakling's rebuttal testimony is unpersuasive. According to Turner, Nakling would have testified only that the sign was not obstructed, bent, or replaced since the accident. The trial court indicated that these were not new issues. In other words, regardless of Salt Lake City's presence on the special verdict form, the trial court concluded that it was foreseeable that Nelson would assert the obstructed-sign defense and, thus, rebuttal evidence would be necessary.[7]

Finally, given the ease with which Turner's counsel located Nakling, there is no merit to the argument that he was unavailable or

5. In argument before the trial court on the motion to allow Nakling's testimony, Nelson's counsel stated that (1) Nelson had indicated the sign was obstructed in answers to interrogatories; (2) the issue of the obstructed sign had been raised over and over in Turner's deposition; and (3) Daniel Rusk, an eyewitness to the accident, had indicated in his deposition that the sign was obstructed. Turner's counsel did not refute these claims during the argument before the trial court and has provided us with no evidence to suggest that Nelson's counsel incorrectly stated the facts.

6. As noted earlier, in oral arguments before the trial court regarding Turner's motion to allow Nakling's testimony, Nelson's counsel asserted that Nelson had, in fact, indicated during her deposition that the stop sign had been obstructed. Turner's counsel did not refute this assertion in his oral statement at trial.

7. As both parties correctly recognized during oral argument, it is common practice and generally appropriate for a defendant to assert that a third person is liable, regardless of whether that party is included on the verdict form.

undiscoverable, as Turner seems to imply. By Turner's own admission, Nakling had lived in the area for ten years and walked by the intersection twice a day. If Turner's counsel could locate him in one night, counsel easily could have found him in the months before trial. In summary, there is nothing in the record before us to indicate that the trial court abused its discretion in refusing to admit the testimony of the unlisted witness.

 We next address whether the trial court misinterpreted the Utah Liability Reform Act (the "Act") in granting Nelson's motion to add a nonparty, Salt Lake City, to the special verdict form. As noted earlier, several days before trial Nelson filed a "Motion for Apportionment of Fault" and a supporting memorandum. The court granted Nelson's motion, adding Salt Lake City to the special verdict form on the first day of trial.

According to Turner, the statutory scheme and the plain language of the Act do not permit the apportionment of negligence to nonparties. *See* Utah Code Ann. §§ 78-27-38 to -41. Therefore, the argument continues, the Act requires Nelson to join the City as a party before it may be added to the special verdict form. *See id.* This would be an issue of first impression in Utah, but we do not reach it.

Even assuming, arguendo, that Turner has properly interpreted the Act, the presence of Salt Lake City on the verdict form was harmless in this case. The jury determined that Nelson was not negligent. For that reason, the jury never reached the issue of whether Turner herself or Salt Lake City was negligent, and the jury never apportioned fault between the parties. Turner simply has not provided this court with a cogent theory of how Salt Lake City's inclusion on a portion of the special verdict form that the jury never reached altered the facts, the presentation of those facts, or the result in this case. *Cf. Beitzel v. City of Coeur d'Alene,* 121 Idaho 709, 827 P.2d 1160, 1164–65 (1992).

Turner admits that Nelson was free to argue to the jury that Salt Lake City was at fault, regardless of whether the City was included on the special verdict form. In fact, it is common trial practice for a defendant to allege that a third person, named or unnamed, party or nonparty, is the real culprit. Turner does not allege that the Act in any way restricts this practice. Both parties presumably would have presented the same evidence and made the same arguments, even if Salt Lake City had not been on the special verdict form.

Turner's real complaint seems to be that Nelson allegedly concealed, until right before trial, her obstructed-sign defense. Turner apparently believes that this subterfuge is highlighted by the late date of the motion to add Salt Lake City to the special verdict form. Nevertheless, Turner has not alleged or provided evidence suggesting that Nelson in any way distorted her answers to interrogatories, failed to disclose her defense, or otherwise misrepresented her position prior to trial. Nelson timely listed all witnesses who testified, made them available for discovery, and as far as the record we have indicates, truthfully responded to written interrogatories. It is not unusual or inappropriate for a party to file a trial-related motion in close proximity to the trial. In short, if Turner believes that discovery abuses occurred, that is a separate issue which she should have raised at trial.

The jury determined that Nelson was not legally negligent. Turner has failed to demonstrate how the City's presence on a portion of the special verdict form that was not completed by the jury prejudiced her case. The error, if any, was harmless. We affirm the trial court.

STEWART, Associate C.J., and HOWE and DURHAM, JJ., and LEONARD H. RUSSON, Court of Appeals Judge, concur.

HALL, Justice, did not participate herein; RUSSON, Judge, sat prior to his appointment to this court.