**Lynn B. ASTILL, Plaintiff and Appellant,**

v.

**Leesha CLARK, Defendant and Appellee.**

**No. 970180–CA.**

Court of Appeals of Utah.

April 9, 1998.

Samuel King and David J. Friel, Salt Lake City, for Appellant.

John Edward Hansen, Todd D. Weiler, and Paul S. Felt, Salt Lake City, for Appellee.

Before WILKINS, Associate P.J., and JACKSON and ORME, JJ.

## OPINION

WILKINS, Associate Presiding Judge:

Plaintiff Lynn B. Astill appeals the trial court's denial of her motion for a new trial, asks this court to adopt a California jury instruction for determining the present value of future damages, and seeks costs and attorney fees under Rule 11 of the Utah Rules of Civil Procedure. We reverse the denial of Astill's motion for a new trial and remand for a new trial.

## BACKGROUND

On June 6, 1994, Astill stopped for a red light at an intersection in a Ford Explorer. Defendant Leesha Clark, who was driving a rented Ford Taurus, rear-ended Astill's Explorer. The collision bent the front license plate on the Taurus, but caused no other visible damage to either the Taurus or the Explorer. Shortly after, Astill claimed she had been permanently injured as a result of the collision. Astill sued for personal injury damages. Clark admitted negligence, but disputed that she was the proximate cause of Astill's alleged injuries. After a three-day trial, the jury rendered a verdict in Clark's favor, finding Clark negligent, but concluding that she was not the proximate cause of Astill's injuries. Astill appeals.

Other facts relevant to the issues raised on appeal are discussed in the analysis.

## ISSUES

Astill challenges the trial court's decision denying her motion for a new trial. In support of this challenge, Astill argues the trial court erred in (1) excluding the rebuttal testimonies of her expert witnesses, (2) excluding her expert witness from the courtroom during the testimony of the defense expert, (3) conducting an off-the-record voir dire of certain jurors, and (4) requiring Astill to submit to an independent medical examination (IME) without either allowing her chiropractor to attend or allowing her to videotape the examination. In addition, if remanded, Astill asks this court to adopt a California jury instruction that provides a specific for-

mula for determining the present value of future wage loss and damages. Finally, Astill seeks to recover court costs and attorney fees based on Rule 11 as a result of defense counsel's alleged "intentional" actions in misleading the court to exclude Astill's expert rebuttal testimony.

## ANALYSIS

### I. Denial of Motion for a New Trial

Initially, we address the alleged trial errors Astill claims justify a remand for a new trial. "We review a denial of a motion for a new trial under an abuse-of-discretion standard." *Jones v. Cyprus Plateau Mining Corp.*, 944 P.2d 357, 361 (Utah 1997); *see also Goddard v. Hickman*, 685 P.2d 530, 532 (Utah 1984) ("A trial court has broad latitude in granting or denying a motion for a new trial, and will not be overturned on appeal absent a clear abuse of discretion."). "We will not reverse the trial court unless the appellant demonstrates that the trial court has clearly abused its discretion and thereby affected the appellant's substantial rights." *Turner v. Nelson*, 872 P.2d 1021, 1023 (Utah 1994).

### A. Expert Rebuttal Testimony

Astill argues the trial court abused its discretion in excluding the rebuttal testimonies of her designated expert witnesses. During her case-in-chief, Astill testified that Clark rear-ended Astill's vehicle at an estimated speed of ten to twenty-five miles per hour (mph). Although the Explorer bumper initially appeared undamaged, Astill presented evidence that the right and left bumper mounting arms and reinforcements were bent as a result of the collision. Cost of repairs were estimated at $400, but Astill replaced the parts for sixty dollars. Astill also presented evidence of her injuries, which she claims were either caused or aggravated by the collision.

During Clark's case-in-chief, Clark testified that she had come to a complete stop behind Astill's Explorer. She claimed that while stopped, she leaned over the front passenger seat to re-attach her child's seatbelt and her foot slipped off the brake. The car rolled forward a few feet and "bumped" the Explorer. She testified that neither she nor her child were injured and that the Taurus did not appear to be damaged, except the front license plate had been bent. Clark called an expert accident reconstructionist, Newell Knight, who opined that the Taurus was traveling no faster than three to four mph upon impact. Knight based his opinion upon photographs of both vehicles' bumpers, the absence of skid marks, the lack of damage to the Taurus, and the fact that neither Clark nor her child were injured. Knight testified about the strength and resilience of both the Explorer and Taurus bumpers, stating that the Taurus bumper is weaker and thus would sustain more damage in a bumper-to-bumper collision. In his opinion, the force of the collision could not have bent the Explorer's bumper mounting arms and reinforcements without causing more damage to the Taurus. He also testified that a three to four mph rear-end collision would be insufficient to cause any injury to Astill.

At the close of Clark's case-in-chief, Astill sought to call two designated expert witnesses, David Lord, an accident reconstructionist, and Leonard Hardle, an automobile repairman, to rebut Knight's testimony regarding the design and relative strengths of Explorer and Taurus bumpers and the probability of injury in low-impact collisions. Astill proffered that Lord would have testified that in his experience people have suffered back and/or neck injuries in low speed, rear-end collisions. In addition, Lord would have testified that without examining the Taurus bumper, the actual impact of the collision could not be determined. However, based on the damage to the Explorer and the design of the Taurus bumper, Lord opined that the impact was well over Knight's three-to-four-mph estimate. Hardle, an automobile repairman specializing in Tauruses, was prepared to testify that, contrary to Knight's opinion, Ford Taurus bumpers are designed to "take a heavy hit" and return to form after impact. He also would have testified that without examining the underside of the Taurus, which was not available for discovery, an exact speed could not be determined. However, based on his inspection of the damage to the Explorer before it was repaired,

Clark's car must have been traveling at about ten mph.

Clark moved to exclude the expert testimony, arguing that the evidence to be elicited should have been presented in Astill's case-in-chief and, as such, was not proper rebuttal testimony. To support the motion, Clark argued that under *Turner v. Nelson,* 872 P.2d 1021 (Utah 1994), rebuttal testimony of expert witnesses is properly excluded if the evidence it purports to rebut is reasonably anticipated, or in other words "not a surprise." Clark argued that the speed of Clark's car had always been at issue and that the evidence Astill wished to present in rebuttal should have been anticipated and presented in her case-in-chief. The trial court agreed and granted the motion excluding Astill's expert testimony. Based on the evidence, the jury rendered a verdict in favor of Clark.

In its order denying Astill's motion for a new trial, the trial court reiterated its reasoning for excluding the expert testimony Astill reserved for rebuttal. The trial court stated:

> "The danger of tactically saving evidence in chief for rebuttal is that an appropriate objection will bar it altogether. For example, defense counsel may object on the ground that the question goes beyond the proper scope of rebuttal and allows the plaintiff to withhold part of its case in chief depriving the defense of the opportunity to address the evidence in its case in chief. Even relevant rebuttal evidence, which might properly have been introduced in the case in chief, may be excluded where its probative balance is substantially outweighed by the danger of unfair prejudice or unfair and harmful surprise."

(quoting 75 Am.Jur.2d *Trial* § 373, at 573 (1991)). The trial court, using language from *Turner,* stated that speed was an issue from the outset. Thus, the defense theory was not a surprise and, in fact, should have been anticipated by Astill. Because Astill reserved for rebuttal evidence which the trial

court determined should have been presented in her case-in-chief, it ruled that the admission of such evidence would "unfairly prejudice the defense by saving such testimony as the last word and not giving the defense an opportunity to address it in their case-in-chief."

▪ In addressing Astill's argument, we begin by analyzing *Turner v. Nelson.* Defense counsel argued that *Turner* excludes Lord's and Hardle's rebuttal testimony. The trial court agreed. Although there are similarities between *Turner* and the present case, there is one distinguishing fact. *Turner* involved an *undisclosed* rebuttal witness who was called during the trial to testify as to a reasonably anticipated defense. The trial court excluded the testimony because it would unfairly disadvantage the defendant, who had no notice of or opportunity to depose the surprise witness. *See Turner,* 872 P.2d at 1023. In affirming the trial court's decision to exclude the rebuttal testimony, the Utah Supreme Court applied the "reasonably anticipated" test to the question of whether an undisclosed rebuttal witness could be allowed to testify. *See id.* at 1024. The court stated that "[w]hen the offering party contends that the *undisclosed* witness is necessary to rebut the adverse party's evidence, the issue hinges on whether the evidence 'sought to be rebutted *could reasonably have been anticipated prior to trial.'*" *Id.* (emphasis added and in original) (citations omitted).

▪ *Turner,* however, does not apply to the facts here because the record shows that Astill had designated both Lord and Hardle as expert witnesses before trial, and there is no evidence suggesting that Clark was surprised by or unprepared for the substance of Astill's expert testimony.[1] The elements of unfair prejudice and surprise associated with undisclosed witnesses are clearly not at issue here. The fact that Astill was not surprised by the defense theory is irrelevant to whether proffered testimony is proper rebuttal evidence. *See Zanoletti v. Norle Properties,*

---

1. The record clearly shows Astill disclosed David Lord as an expert witness before trial. Although the record is unclear as to whether Astill designated Leonard Hardle as a potential witness, there is nothing in the record to suggest that he was a surprise witness. To the contrary, the record suggests the defense knew of and expected Hardle's testimony.

*Corp.*, 688 So.2d 952, 954 (Fla.Dist.Ct.App. 1997) ("The element of surprise may become relevant in cases where, for example, the name of a witness was not disclosed pursuant to a pretrial order."). The fact that Astill could have anticipated Clark's defense and presented the expert testimony in her case-in-chief is likewise not determinative because Astill need not anticipate and then disprove defendant's potential theory of the case. *See id.; see also McFall v. Inverrary Country Club, Inc.*, 622 So.2d 41, 44 (Fla.Dist.Ct.App. 1993) (stating plaintiff has no duty to anticipate and disprove all potential defenses in its main case); *but see Sirotiak v. H.C. Price Co.*, 758 P.2d 1271, 1278 (Alaska 1988) ("[P]laintiff may not ignore known defense theories or close his or her eyes to evidence that directly counters plaintiff's prima facie case."); *Takayama v. Kaiser Found. Hosp.*, 82 Hawai'i 486, 923 P.2d 903, 913 (1996) (stating party " 'will not be permitted to hold back evidence confirmatory of his or her case and then offer it on rebuttal' " (quoting 75 Am.Jur.2d *Trial* § 151, at 212 (1971)). Astill need only establish a prima facie case of liability in her case-in-chief. *See Sirotiak*, 758 P.2d at 1278 ("[E]vidence which is necessary to prove a prima facie case should be presented in the plaintiff's case-in-chief."). Further, evidence should not be excluded from rebuttal merely because it could have been made part of the case-in-chief. *See Shell Oil Co. v. Gutierrez*, 119 Ariz. 426, 581 P.2d 271, 274 (Ariz.Ct.App.1978); *Blakely v. Bates*, 394 N.W.2d 320, 324 (Iowa 1986); *Morrison v. Air California*, 101 Nev. 233, 699 P.2d 600, 602 (1985). Although the trial court properly noted its concern that the admission of such rebuttal evidence would give Astill the "last word" or allow her to "sandwich" the defense, surrebuttal, rather than the exclusion of competent and proper rebuttal evidence, is the proper remedy.

■ To determine whether the trial court abused its discretion in excluding the expert testimony of Lord and Hardle, we must determine whether the proffered evidence was proper rebuttal. Rebuttal evidence has been defined as "evidence tending to refute, modify, explain, or otherwise minimize or nullify the effect of the opponent's evidence." *Randle v. Allen*, 862 P.2d 1329,

1338 (Utah 1993). Rebuttal evidence should be limited to evidence made necessary by the opponent's case-in-reply, *see* 6 J. Wigmore, *Evidence* § 1873, at 672 (1976), and evidence required to counter new facts presented in the defendant's case-in-chief. The purpose of rebuttal evidence is not to merely contradict or corroborate evidence already presented, but to respond to new points or evidence first introduced by the opposing party. *See Sirotiak*, 758 P.2d at 1277. " '[W]here a defendant introduces evidence of an affirmative matter in defense or justification, the plaintiff, as a matter of right, is entitled to introduce evidence in rebuttal as to such affirmative matter.' " *Morrison*, 699 P.2d at 602 (quoting *Pellico v. E.L. Ramm Co.*, 68 Ill.App.2d 322, 216 N.E.2d 258, 261 (1966)).

Under facts similar to those here, the Florida Court of Appeal in *Zanoletti v. Norle Properties, Corp.*, 688 So.2d 952, 954 (Fla. Dist.Ct.App.1997), held that a trial court abused its discretion in excluding a plaintiff's expert witness on rebuttal. In *Zanoletti*, the plaintiff was injured when she was hit by a truck driven by the defendant's employee. *See id.* at 953. At trial, the plaintiff testified that before she crossed the intersection, she looked both ways and then crossed while the "walk" sign was illuminated. *See id.* The driver testified that he had driven past the plaintiff when she walked into the back of the truck. *See id.* Defendant's accident reconstruction expert testified that, in his opinion, the plaintiff was the sole cause of the accident because she failed to yield to the truck and failed to observe oncoming traffic and the traffic signals. *See id.* The defense rested and the plaintiff sought to introduce the testimony of her accident reconstruction expert on rebuttal. *See id.* The trial court ruled that the plaintiff was not surprised by the testimony, and thus it was not appropriate rebuttal testimony. *See id.*

On appeal, the defendant argued that the plaintiff's expert was properly excluded because the plaintiff knew what the defendant's expert would testify to before trial, the plaintiff's expert testimony was essential to prove her case, and the plaintiff should have presented her expert in her case-in-chief. *See id.* at 953–54. The *Zanoletti* court disa-

greed, reasoning that the testimony of the accident reconstruction expert was not required to establish a prima facie case of liability, the plaintiff had not presented any expert testimony in her case-in-chief, and the plaintiff's expert would have refuted the defense's expert testimony. *See id.* at 954. The *Zanoletti* court held that the trial court abused its discretion in limiting rebuttal which went "to the heart of the principal defense and which [was] not cumulative." *Id.*

In this case, as a matter of defense, Clark presented evidence through Knight's expert testimony that Clark's speed could not have exceeded three to four mph. Knight based his expert opinion upon his knowledge of the design and strength of both the Explorer and Taurus bumpers and the visible damage to the Taurus. In addition, he opined that a three to four mph impact was insufficient to cause injuries. Astill presented no expert testimony on these issues in her case-in-chief, and such evidence was not required to establish a prima facie case of liability against Clark. In fact, the trial court denied Clark's motion for a directed verdict at the close of Astill's case. The clear purpose of Astill's rebuttal evidence was to contradict and refute new evidence first presented to the jury by Clark in her case-in-reply. The substance of Lord's and Hardle's expert testimony attacked the heart of Clark's defense theory and was offered for the limited purpose of refuting Clark's evidence. Therefore, we conclude the court abused its discretion in excluding Astill's rebuttal evidence.

■ "Fundamental fairness requires that a party be permitted to introduce evidence to rebut inferences the jury can draw from the opposing party's evidence." *Morrison,* 699 P.2d at 603. In this case, such evidence was excluded. Knight's unchallenged expert testimony showed that Clark could not have been traveling over three to four mph when she rear-ended Astill's Explorer. This evidence may well have persuaded the jury that Clark was not liable for Astill's alleged injuries. Even though evidence sufficient to support the verdict was presented at trial, had Astill's rebuttal evidence been admitted, a different result may well have been reached.

As such, the error was prejudicial. *See State v. Rammel,* 721 P.2d 498, 500 (Utah 1986) (finding error harmless where "it is unlikely that the excluded testimony prejudiced the defendant's rights in a substantial manner").

## B. Exclusion of Expert Witness from Courtroom

Astill asserts the trial court erred in excluding her expert witness from the courtroom during the trial pursuant to a pre-trial exclusionary order. The exclusion of witnesses from the courtroom during trial is a matter within the trial court's discretion. *See* Utah Code Ann. § 78-7-4 (1996). However, Rule 615(1)(c) of the Utah Rules of Evidence limits a court's discretion to exclude a witness whose "presence is shown by a party to be essential to the presentation of the party's cause." Astill contends that her expert's presence was essential to the presentation of her case. Astill asserts that Lord's exclusion from the courtroom precluded her from effectively cross-examining Knight because counsel was unable to "ask the right questions concerning Knight's errors on bumper deformation and multiple bumper support systems."

■ The purpose behind excluding witnesses from the courtroom during trial is to prevent witnesses from being influenced or tainted by the testimony of other witnesses. *See Morvant v. Construction Aggregates Corp.,* 570 F.2d 626, 629-30 (6th Cir.1978). The majority of both state and federal courts recognize the difference between " 'percipient' witnesses who testify to observed facts in controversy, and expert witnesses who base their opinions on hypothetical facts, personal knowledge of facts not in controversy, or testimony they hear in court." *People v. Valdez,* 177 Cal.App.3d 680, 223 Cal.Rptr. 149, 152 (1986); *see, e.g., Johnson v. District of Columbia,* 655 A.2d 316, 318 (D.C.1995); *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.,* 993 F.2d 1201, 1209-10 (5th Cir. 1993); *Morvant,* 570 F.2d at 629-30. These courts agree that the presence in the courtroom of an expert witness who does not testify to the facts in controversy hardly seems suspect, and in most cases the expert's presence may be beneficial or even necessary

if the expert's opinion is based on the facts of the case. *See, e.g., Polythane Sys.,* 993 F.2d at 1209–10; *Morvant,* 570 F.2d at 629–30.

██ However, the exclusion of an expert witness does not automatically constitute reversible error. To prove the trial court abused its discretion in excluding an expert witness from the courtroom during trial, the appellant must show that he or she was harmed or prejudiced by the court's action. *See* Utah R.Civ.P. 61; *Garmon v. United States,* 684 A.2d 327, 328 (D.C.1996); *Baker v. Air–Kaman, Inc.,* 510 So.2d 1222, 1224 (Fla.Dist.Ct.App.1987). Astill maintains she was denied effective cross-examination of the defense expert, Knight, because she was "unable to ask the right questions" without her expert's help. However, had she deposed Knight before trial, Astill could have prepared for Knight's testimony. In addition, the trial court recessed after Knight's direct-examination and before cross-examination specifically to allow Astill to consult with her expert. Therefore, any error in Astill's inability to effectively cross-examine Knight was not a result of the trial court's exclusion order. We hold the trial court did not abuse its discretion in excluding Lord from the courtroom.

### C. Off-the-Record Voir Dire

██ Astill argues the trial court erred in conducting an off-the-record voir dire, thus denying her a record on appeal. However, there is no record of Astill's objection to this procedure. Because Astill has failed to preserve the issue for appeal, we decline to address it. *See State v. Anderson,* 789 P.2d 27, 29 (Utah 1990) (holding defendant could not assert, as basis of error on appeal, issue not raised before trial court, even though defendant's claim involved constitutional right); *State v. Webb,* 790 P.2d 65, 77 (Utah Ct.App.1990) ("As the Utah appellate courts have reiterated many times, we generally will not consider an issue, even a constitutional one, which the appellant raises on appeal for the first time.").

### D. Monitoring of Independent Medical Examination

██ Astill argues the trial court abused its discretion in granting Clark's motion to compel Astill to submit to an independent medical examination (IME) without the presence of her chiropractor and without requiring the examination be videotaped. Astill claims that an "appropriate" monitor or a videotape of the IME is required to ensure both an adequate IME and a fair procedure for all parties. We conclude Astill failed to prove that the trial court abused its discretion.

Under Rule 35(a) of the Utah Rules of Civil Procedure, a trial court has discretion to order a party to submit to a physical or mental examination by a suitably licensed or certified examiner. *See* Utah R.Civ.P. 35(a); *see also Stone v. Stone,* 19 Utah 2d 378, 381, 431 P.2d 802, 803 (1967) ("[Rule 35(a) ] applies to any action in which the mental or physical condition of a party is in controversy."). The trial court's discretion includes specifying "the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." Utah R.Civ.P. 35(a). In this case, the trial court ordered Astill to submit to an IME to be performed by Dr. Nathaniel Nord, a neurologist. The trial court denied Astill's requests to have her chiropractor present at the time of the IME and to videotape the IME, but allowed Astill to be accompanied by a neurologist of her choosing. Astill, however, did not bring a neurologist to monitor her examination and provided no reason why she was unable to obtain one. Now she claims error in that there was no "appropriate" monitor to ensure that the IME was properly performed.

First, it is within the trial court's discretion to require Astill to be accompanied by a neurologist, rather than her chiropractor, during her IME. Astill requested her chiropractor's presence during the IME so that he could "monitor" the evaluation. However, chiropractors and neurologists are trained in different fields. A chiropractor may be able to perform an independent examination, but is not qualified to evaluate a neurologist's performance. The Utah Supreme Court has recognized that "[p]ractitioners in one specialty are not ordinarily competent to testify as experts on the standard of care applicable

in another specialty." *See Arnold v. Curtis,* 846 P.2d 1307, 1310 (Utah 1993). Contrary to Astill's assertions, the trial court's order did not preclude her from monitoring her IME; it merely specified who could appropriately monitor and evaluate the examination. By failing to obtain a neurologist, Astill herself failed to provide monitoring of her IME.

■ Second, Astill asks this court to create a general rule requiring all physical examinations ordered under Rule 35(a) be videotaped. We decline. There is no basis for such a requirement under Rule 35, no precedent for such a requirement, and such was not required in this case to ensure a fair and adequate examination. Moreover, whether a blanket rule should exist requiring that all physical examinations be videotaped is a policy matter for the supreme court to determine.

■ Further, we conclude that the trial court did not abuse its discretion by denying Astill's request to videotape her own IME. On appeal, during oral argument, Astill alleged that the reason she did not obtain a neurologist to monitor her IME was that she could not afford one. This court recognizes that it is the examinee who is burdened with the expense of complying with a court order which allows only a practitioner of the same field as the medical examiner to attend and monitor an IME. We acknowledge that videotaping an IME may be an inexpensive alternative in individual cases, considering the examinee's privacy rights and providing that the examinee is willing to be videotaped. However in this case, the record, including Astill's reply to Clark's motion to compel and her brief on appeal, contains no evidence that the expense of the neurologist would prevent Astill from monitoring the IME. Therefore, we cannot say the trial court abused its discretion in denying Astill's request to videotape her IME because the trial court had no reason to know that Astill would be unable to obtain a neurologist.

Finally, even without a "monitor," Astill had every opportunity to challenge Dr. Nord's qualifications, examination procedures, medical conclusions, compensation, and the detailed written report to point out

any errors Astill alleges resulted from an inadequate IME.

We conclude that the trial court did not abuse its discretion in excluding Astill's expert from the courtroom during the trial, in conducting an off-the-record voir dire, or in denying Astill's request either to have her chiropractor attend the IME or to videotape the IME. However, the trial court did abuse its discretion in excluding the rebuttal testimony of Astill's expert witnesses. Because this error was prejudicial, we reverse the trial court's denial of Astill's motion for a new trial and remand for a new trial.

## II. California Jury Instructions

■ In the case of a remand, Astill argues that this court should adopt a California jury instruction that provides a mathematical formula and an amortization table to aid the jury in determining the present value of future wage loss and future medical expense damages. However, aside from the bare assertion that such a table is fair to all parties and helpful to juries, Astill provides no analysis or legal authority to support such a proposition. Therefore, we decline to address this issue. *See State v. Amicone,* 689 P.2d 1341, 1344 (Utah 1984) (declining to address issue, even constitutional one, that is inadequately researched and briefed); *State v. Price,* 827 P.2d 247, 249 & n. 5 (Utah Ct.App. 1992) (same).

## III. Costs and Attorney Fees under Rule 11

■ Astill requests court costs and attorney fees based on alleged Rule 11 violations. *See* Utah R.Civ.P. 11. Astill argues that defense counsel "intentionally misinterpreted" *Turner,* which led the court to improperly exclude Astill's rebuttal evidence. Although defense counsel misinterpreted the holding in *Turner,* we cannot say that defense counsel's reading of *Turner* was not plausible. *See Barnard v. Utah State Bar,* 857 P.2d 917, 920–21 (Utah 1993) (requiring reasonable inquiry under Rule 11). Moreover, the record shows that the trial court had a copy of and was reading *Turner* when it made its decision to exclude Astill's expert

witness testimony. Therefore, Astill's request for Rule 11 costs and attorney fees is denied.

Reversed and remanded.

JACKSON and ORME, JJ., concur.